(No. 65832.—

BANK OF ASPEN, Appellant, v. FOX CARTAGE, INC., *et al.* (Batavia Bank, Appellee).

*Opinion filed January 18, 1989.*

308

CALVO, J., took no part.

Lambert M. Ochsenschlager, Wayne F. Weiler and James C. James III, of Reid, Ochsenschlager, Piccony & Weiler, of Aurora, for appellant.

Douglas Drenk and David Drenk, of Drenk & Drenk, of Wheaton, for appellee.

JUSTICE RYAN delivered the opinion of the court:

This appeal involves supplementary proceedings to discover assets under section 2—1402 of the Code of

Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402), which were instituted in the circuit court of Kane County, and is brought by the plaintiff/judgment creditor, Bank of Aspen (Aspen), a Colorado bank, with a cross-appeal by the third-party citation respondent, Bank of Batavia (Batavia). Two questions are presented on appeal. The first issue is whether the citation to discover assets, which was served upon Batavia pursuant to section 2—1402 of the Code of Civil Procedure, and which the trial court judge continued from time to time, was a wrongfully issued injunction that deprived Batavia of procedural due process. The second issue is whether the trial court's determination that Batavia had superior rights to the stock in question was against the manifest weight of the evidence.

The appellate court held that the citation to discover assets served upon Batavia pursuant to section 2—1402 constituted a wrongfully issued injunction and remanded the matter to the trial court for a determination of damages in accordance with its ruling. (*Bank of Aspen v. Fox Cartage, Inc.*, 158 Ill. App. 3d 939 (*Aspen II*); see Ill. Rev. Stat. 1985, ch. 110, par. 11—110.) The appellate court affirmed the trial court's determination that Batavia had a secured, and thus superior, interest in the stock. 158 Ill. App. 3d at 945-46.

Because a citation issued pursuant to section 2—1402 satisfies constitutional requirements and is not an injunction, we reverse the appellate court's ruling on this issue. We affirm the appellate court's holding that the trial court's ruling on the ownership of the stock is not against the manifest weight of the evidence.

The facts giving rise to this controversy began when Aspen, a bank in Colorado, made a loan to the judgment debtor, David L. Thomas, in 1981. Thomas defaulted on this loan. On April 19, 1984, a Colorado court entered a judgment against Thomas and in favor of Aspen. Aspen

then recorded the judgment in Kane County, Illinois, on December 18, 1984. The Illinois judgment included an order that enjoined Thomas from transferring his property.

On January 7, 1984, before either the Colorado or Illinois judgments had been entered in favor of Aspen, Thomas, as president and sole shareholder of Roselaine Construction, Inc., obtained a loan from Bank of Batavia, and pledged 1,430 shares of Batavia Concrete, Inc., stock to secure the loan. Bank of Batavia took possession of the stock on this date. On December 22, 1984, Bank of Batavia made another loan to Thomas, which was secured by an additional security interest in the stock. When Roselaine Construction, Inc., defaulted on the Bank of Batavia loans on September 20, 1985, Batavia foreclosed on the stock and prepared to sell it in a private sale. Batavia informed judgment creditor Aspen of this intention to sell the stock.

On September 30, 1985, the day before the scheduled sale date, Aspen served a citation to discover assets on Batavia pursuant to section 2—1402 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402). A court clerk issued the citation, pursuant to Rule 277(b) (107 Ill. 2d R. 277(b)), which contained language prohibiting Batavia from transferring or otherwise disposing of the judgment debtor's property. The shares of stock now in dispute were not specifically mentioned in the citation. Batavia filed an emergency motion to quash the citation on October 2, 1985. The trial court held a hearing on this motion on that day, October 2, 1985, and continued the citation until October 9, 1985, for a hearing pursuant to garnishment proceedings. (See Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(d).) The trial court denied Batavia's motion to dissolve the citation and it remained in effect through the trial on the merits held on December 23, 1985, and until the final decision rendered on May 16, 1986. At that time, the trial court determined that Bata-

via possessed the superior interest in the stock and dissolved the citation.

Batavia contended throughout the proceedings that the citation was an inappropriate procedure and constituted, in substance, an injunction. When the trial court continued the citation hearing, Batavia filed an interlocutory appeal contending that the trial court's refusal to dissolve the citation was, in effect, a refusal to dissolve an injunction and was an appealable order under Rule 307(a). The appellate court dismissed the appeal, holding that the restraining provision of section 2—1402 was not an injunction and was thus not an appealable interlocutory order under Supreme Court Rule 307. *Bank of Aspen v. Fox Cartage, Inc.* (1986), 141 Ill. App. 3d 369, 373 (*Aspen I*).

The final determination of the trial court found in favor of Batavia and against Aspen and dissolved the citation as to the 1,430 shares of stock. The court also denied Batavia's motion for a finding that the citation proceedings constituted a restraining order which was wrongfully issued and denied Batavia leave to file a petition for damages. Batavia again appealed. In the appeal, Batavia contended that the restraining provision of section 2—1402 constituted a wrongfully issued injunction and deprived Batavia of procedural due process. Batavia argued that notwithstanding the finding of the appellate court in *Aspen I* that Rule 307 (107 Ill. 2d R. 307) was inapplicable, the citation was an inappropriate remedy that enjoined it from exercising its right to sell its property without the procedural due process protections guaranteed by the United States Constitution (U.S. Const., amend. XIV). Batavia further argued that because the citation was improperly issued, it was entitled to recover damages from Aspen for a wrongfully issued injunction under section 11—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 11—110).

Aspen cross-appealed, contending that the trial court erred when it determined that Batavia possessed the superior interest in the stock.

In this second appeal (158 Ill. App. 3d 939), the appellate court held in favor of Batavia on Aspen's cross-appeal, finding that the trial court did not err when it determined that Batavia had a superior interest in the stock. The appellate court, on Batavia's appeal, held that the trial court had erred in continuing the restraining provision of section 2—1402 over the objections of third-party citation respondent Batavia, which had maintained throughout the trial proceedings that it had a proprietary interest in the stock. (*Aspen II*, 158 Ill. App. 3d at 948-49.) The court articulated a new rule in interpreting this statute, stating that "where a third-party respondent brings its claim to the property to the attention of the trial court, the court must vacate the citation's restraining provision with respect to that property." (158 Ill. App. 3d at 952.) The appellate court further held that because the trial court had erroneously issued a preliminary injunction, Batavia was entitled to prove any resulting damages it had incurred pursuant to section 11—110 of the Code and remanded the case for a determination of damages. (158 Ill. App. 3d at 954-55.) We granted Aspen's petition for leave to appeal.

Considering first the issues involving section 2—1402, we note that Batavia raises two arguments with respect to section 2—1402. First, Batavia contends that the decision of the appellate court in *Aspen I*, which held that a citation pursuant to section 2—1402 was not an injunction and was thus not an appealable order, should be reversed. (*Aspen I*, 141 Ill. App. 3d 369.) Batavia argues that the citation was an *ex parte* restraining order that was appealable under Supreme Court Rule 307(b) (107 Ill. 2d R. 307(b)). In support of this contention, Batavia argues that the citation is, in substance, an injunction

because like an injunction, a citation seeks to preserve the status quo and imposes penalties similar to those imposed for the violation of an injunction. Batavia's second argument is that section 2—1402 violates the due process clause of the fourteenth amendment to the United States Constitution when the citation is employed to enjoin a third-party respondent from transferring or disposing of property because, Batavia contends, it is accomplished without notice, or an immediate post-seizure hearing, or the posting of a bond, and places the burden on the third-party citee to prove exemption.

We find these arguments unpersuasive. An examination of the purpose and mechanics of this statute reveals why Batavia's arguments must fail. Section 2—1402 provides a method by which a judgment creditor may begin supplementary proceedings against a third party as a means of discovering assets belonging to the judgment debtor that the third party may have in its possession. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(a).) The judgment creditor may commence the supplementary proceedings by requesting the clerk of the circuit court to issue a citation to the third party who is thought to be in possession of the judgment debtor's property. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(a).) Supreme Court Rule 277 (107 Ill. 2d R. 277) prescribes the procedures by which this section is implemented. The judgment creditor may elect to have the citation issued by the clerk, with a restraining provision that prohibits the party from transferring or disposing of the judgment debtor's property under penalty of contempt, or if the citation is issued to a third party, the court may enter a judgment against it in the amount of the unpaid portion of the judgment in addition to costs allowable under the section, or in the amount of the value of the property transferred, whichever amount is lesser. Ill. Rev. Stat. 1985, ch. 110, par. 2—1402 (d)(1).

The purpose underlying the restraining provision of section 2—1402 is to provide "a means of forestalling the judgment debtor or a third party from frustrating the supplementary proceedings before the judgment creditor has had an opportunity to reach assets, *** in the possession of [the] debtor or of a third party." (*Kirchheimer Brothers Co. v. Jewelry Mine, Ltd.* (1981), 100 Ill. App. 3d 360, 362.) Further, the section "is designed to provide a statutory foundation for an efficient and expeditious procedure for discovery of assets and income of the judgment debtor and compelling their application to the payment of the judgment ***." (Ill. Ann. Stat., ch. 110, par. 2—1402, Joint Committee Comments, at 862 (Smith-Hurd 1983).) As such, "[t]he restraining provision of the citation is not an injunction ***."

> "It is simply notice to the person served with the citation that if he transfers property subject to the supplementary proceeding, thereby attempting to impede the administration of justice, and places the property beyond the reach of the court, he will be punished either by having a judgment entered against him for the amount of the judgment creditor's claim or the value of the property, whichever is less, or may be punished as and for contempt." Ill. Ann. Stat, ch. 110, par. 2—1402, Historical and Practice Notes, at 867 (Smith-Hurd 1983).

When a third party asserts rights in the property in question, the section provides that the claimant's rights in the property shall be determined in accordance with the garnishment statute. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(e); see Ill. Rev. Stat. 1985, ch. 110, par. 12—701 *et seq.*) Accordingly, the court must hold an immediate hearing on the merits of the parties' claims, which may be postponed for good cause. (Ill. Rev. Stat. 1985, ch. 110, par. 12—711(a).) These garnishment provisions also permit the garnishee to assert its right to offset any claims it has against the judgment debtor. (Ill.

Rev. Stat. 1985, ch. 110, par. 12—708.) After an examination of the considerations outlined above, we conclude that the restraining provision of section 2—1402 does not constitute an injunction. The statute simply informs the citee of the penalties which may occur if it transfers or disposes of property belonging to the judgment debtor.

We find the language and holding of Judge Learned Hand in *Capital Co. v. Fox* (2d Cir. 1936), 85 F.2d 97, *aff'd* (1936), 299 U.S. 105, 81 L. Ed. 67, 57 S. Ct. 57, relevant and persuasive with respect to the issue presented. In *Capital Co.*, an argument was raised that section 781 of the Civil Practice Act of New York was unconstitutional because it imposed an injunction without a judicial order. Judge Hand rejected this argument, stating:

> "If the statute affected to declare in advance of a hearing that the plaintiff's attorney might forbid the 'third party's' transfer of any specific property under pain of contempt, there would indeed be much to say for that argument. It does not do so; it measures the extent of the prohibition by the judgment debtor's ownership of the property; the 'third party' is forbidden to transfer only what property he owns, and cannot be punished without proof that any property thereafter transferred was the debtor's in fact. The statute therefore does no more than declare it unlawful to transfer a judgment debtor's property after notice and impose the penalty of contempt for disobedience. It anticipates no judicial decision; it merely creates a new class of unlawful acts, as statutes have done from time immemorial. We are not to be deceived by the fact that the command of the statute is called an injunction, or that it is punished by a court, not by trial to a jury." *Capital Co. v. Fox*, 85 F.2d at 101.

Further, the historical and practice notes to section 2—1402 state that this section should be construed in accordance with the New York statute that Judge Hand examined. (Ill. Ann. Stat., ch. 110, par. 2—1402, Historical &

Practice Notes, at 867 (Smith-Hurd 1983).) We note that the citation here does not specifically prohibit the transfer of the 1,430 shares of stock as Batavia claims. As Judge Hand observed concerning the New York statute, the citation prohibits only the transfer of property of the judgment debtor held by the citee. The only difference between section 2—1402 and the New York statute is that the latter is self-executing, while the Illinois statute allows the attorney representing the judgment creditor to decide whether or not to pursue the statutory authorization. Like Judge Hand, we do not find that the restraining provision of a citation is an injunction. The citation simply notifies the third party of the penalties for transferring or disposing of assets belonging to the judgment debtor.

Accordingly, because we find that section 2—1402 does not constitute an injunction, we reverse the appellate court's decision that the case be remanded so that Batavia may prove damages resulting from a wrongfully issued injunction pursuant to section 11—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 11—110).

Batavia further argues that section 2—1402 is unconstitutional as applied in this case, contending that the prohibition preventing transfer was imposed without notice, or an immediate post-seizure hearing, or the posting of a bond, and places the burden on the third-party citee to prove exemption. The appellate court found these arguments persuasive and held that section 2—1402 deprived Batavia of procedural due process guaranteed by the fourteenth amendment to the United States Constitution. (*Aspen II*, 158 Ill. App. 3d at 951-52.) As a result, the appellate court concluded that when a third-party citation respondent notifies the trial court of its interest in the property, the trial court must dissolve the citation's restraining provision with respect to that property. (158 Ill. App. 3d at 952.) We disagree.

Nothing in our examination of the record indicates that Batavia suffered a deprivation of due process. Due process, with its components of notice and hearing, does not require a rigid or generic formula. Rather, " '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' " (*Mitchell v. W.T. Grant Co.* (1974), 416 U.S. 600, 610, 40 L. Ed. 2d 406, 415, 94 S. Ct. 1895, 1901, quoting *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy* (1961), 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 1236, 81 S. Ct. 1743, 1748.) Further, when property rights are at issue, it is not a deprivation of due process to postpone judicial determination if the provisions for ultimate determination are adequate. (*Mitchell v. W.T. Grant Co.* (1974), 416 U.S. 600, 611, 40 L. Ed. 2d 406, 416, 94 S. Ct. 1895, 1902.) Thus, as long as the complaining party receives a fair and timely hearing in accordance with the applicable circumstances, the requisites of due process are satisfied.

In the case before us, Batavia was afforded an early hearing on its motion to quash the citation. The citation was served upon Batavia on September 30, 1985. On October 2, 1985, Batavia filed an "Emergency Petition to Quash Citation to Discover Assets and Assessment of Attorneys Fees." Batavia was given a hearing on this motion on the same day it was filed, at which time all parties were given ample opportunity to argue their respective positions before the trial judge as is evidenced by the 51-page trial transcript of that day's proceedings. Aspen and Batavia reappeared before the court five days later, on October 7, 1985, concerning discovery. At that time, Aspen noted that counsel for Bank of Batavia had delayed the scheduled time for the taking of depositions of certain Aspen officials. The trial judge, after hearing extensive argument, did not believe that an emergency warranted dissolving the citation and continued the cita-

tion hearing, which had been set for October 9, 1985, to a later date.

After a review of these facts, we find that Batavia did not suffer a deprivation of due process. Batavia was afforded an immediate hearing with sufficient opportunity to present its arguments. This hearing conformed with due process guarantees. Any delay of the ultimate judicial determination of the case was not caused by a statutory defect. Rather, the attorneys themselves caused the delay by prolonging the discovery process. Based upon our review of the record, we conclude that the trial judge granted the parties adequate opportunity to present their arguments and would not have continued the citation hearing unless convinced that the matter did not necessitate immediate adjudication.

We note that the appellate court reached its decision after analyzing two United States Supreme Court cases that involved the constitutionality of State prejudgment garnishment and attachment statutes. (*Aspen II*, 158 Ill. App. 3d at 949-51.) In these two cases, the Supreme Court had found that the statute in *Mitchell v. W.T. Grant Co.* (1974), 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1985, conformed with due process guarantees, while the statute in *North Georgia Finishing, Inc. v. Di-Chem, Inc.* (1975), 419 U.S. 601, 42 L. Ed. 2d 751, 95 S. Ct. 719, failed to provide adequate safeguards. After a discussion of the Supreme Court's rulings in these cases, the appellate court found that section 2—1402 was more closely analogous to the unconstitutional statute at issue in *North Georgia Finishing* than to the constitutional statute at issue in *Mitchell*. We disagree.

Initially, we note that both statutes in the cases set forth above involved prejudgment seizures of property. In *Mitchell*, consumer goods were physically taken from the possession of the buyer/creditor before a judgment was entered. In *North Georgia Finishing*, the debtor's bank

account was impounded and the assets frozen prior to a judicial determination. In the present case, however, Aspen had already obtained a judgment against the judgment debtor before the citation was served upon Batavia. As a result, Aspen had a lien on the judgment debtor's property, and the dispute was between Aspen and Batavia, as creditors of the judgment debtor, as to which creditor possessed the superior right to the stock. This factual situation contrasts with both *Mitchell* and *North Georgia Finishing*, where there had been no type of judicial determination as to whether any debt was actually owed.

Further, in the instant case, the stocks were not seized or impounded, as the property was in *Mitchell* and *North Georgia Finishing*. The stock remained in the possession of Batavia throughout the litigation process. Indeed, although Batavia argues that it was injured because it was prevented from selling the stock, we note that Aspen was amenable to the idea that Batavia sell the stock and place the proceeds of the sale in escrow until the final determination as to which creditor had the superior interest in the judgment debtor's property. Batavia, however, chose not to pursue this course of action and the stock remained in Batavia's possession. These facts support the conclusion that the trial court was not faced with an emergency situation and justified the continuances for the purpose of discovery on the conflicting claims of ownership of the stock.

To better understand that the citation did not constitute a seizure of the stock in question, we must consider the nature of the sanctions provided for a violation of the citation order prohibiting the transfer of the judgment debtor's property. The language of section 2—1402(d)(1) is not clear as to the nature of the punishment the court could have imposed upon Batavia had it sold the stock and it was instead thereafter determined that the stock

did not belong to Batavia, but was the property of the judgment debtor. Section 2—1402(d)(1) states:

> "The court may punish any *party* who violates the restraining provision of a citation as and for a contempt, or *if the party is a third party* may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this section, or in the amount of the value of the property transferred, whichever is lesser." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(d)(1).

It appears from this provision that the statute is attempting to provide different punishment for third-party citees from that provided for a party to the litigation in which the judgment was entered, that is, the judgment debtor. The use of the disjunctive "or" strengthens that conclusion. Uncertainty is inserted into this conclusion, however, by the language in the statute which states "or if the *party* is a *third party*" (emphasis added). This could indicate that when the word "party" was used earlier in that sentence, it did not refer only to a party to the original proceeding, that is, the judgment debtor.

It would appear, however, that the appropriate punishment for a third-party respondent in a citation proceeding who has a color of a legitimate claim to the property and disposes of the property in violation of the prohibition of the citation, and the claim later proves not to be valid, would be by way of the judgment remedy provided. If, however, a third-party respondent in the citation proceedings deliberately puts the property beyond the reach and in violation of the citation without color of a legitimate claim, contempt may be the appropriate punishment. That part of section 2—1402 quoted above states that the court may *punish* the party who violates the prohibition of the citation. The purpose of the imposition of the contempt sanction is thus punishment for those who violate the court's order. It is not to compel compliance. The con-

tempt envisaged is therefore criminal contempt. (See *County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 135-36; *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 409-10.) It is generally held that to constitute criminal contempt, one must willfully or contumaciously violate the order of the court. *People v. Wilcox* (1955), 5 Ill. 2d 222, 228.

The citation did not specifically enjoin the disposition of the stock in question. It only prohibited the disposition of property of the judgment debtor. Thus, if Batavia legitimately believed that it owned the stock, and that the stock was not property of the judgment debtor, it could not have been punished for contempt if it had sold the stock. This would not have been a willful or contumacious violation of the court order. The value of the stock was less than the amount of the judgment entered in favor of Aspen. As a result, if Batavia had sold the stock, and the trial court had later found that Aspen possessed the superior right to the stock, Batavia would have been liable simply for the value of the stock.

Because the restraining provision of section 2—1402, which was continued by the trial judge in the present case, did not serve to seize the stock from Batavia's possession, it differs from the prejudgment seizure statutes presented in *Mitchell* and in *North Georgia Finishing.*

Rather, the statutes presented in these two cases, which were the focus of the appellate court's discussion in *Aspen II*, were similar to the Illinois Attachment Act, which was repealed in 1982. (Ill. Rev. Stat. 1973, ch. 11, par. 1 *et seq.* (repealed by Pub. Act 82—280, §19B—101, eff. July 1, 1982).) The Illinois Attachment Act authorized a creditor to attach the assets of an alleged debtor pending outcome of suit. The creditor could obtain the writ of attachment before filing a complaint against the debtor and before the debtor had notice or an opportunity for a hearing. In contrast, in the present case, pursuant to sec-

tion 2—1402, Aspen had obtained a judgment, the stock remained in the possession of Batavia, and Batavia had adequate notice and opportunity for hearing.

After outlining these distinctions between section 2—1402 and the statutes involved in cases relied upon by the appellate court, we further note that the Supreme Court, nevertheless, found that the statute in *Mitchell* satisfied due process requirements. (*Mitchell v. W.T. Grant Co.* (1974), 416 U.S. 600, 607, 40 L. Ed. 2d 406, 413, 94 S. Ct. 1985, 1900.) In *Mitchell*, the Louisiana statute in question authorized a creditor to sequester property upon an *ex parte* application and without prior notice to the debtor or an opportunity for a preseizure hearing. (416 U.S. at 605-07, 40 L. Ed. 2d at 412-13, 94 S. Ct. at 1899-1900.) The Court found that the statute complied with constitutional safeguards because it required the creditor to file a fact-based affidavit before a judge, who would then issue a writ, and because the statute provided for an immediate post-seizure hearing. 416 U.S. at 607, 40 L. Ed. 2d at 413, 94 S. Ct. at 1900.

Section 2—1402, as applied in the case before us, embodies the same constitutional safeguards that the Supreme Court approved in *Mitchell*. During both appeals, Batavia argued that the trial court's continuance of the citation hearing and its denial of Batavia's motion to dismiss the citation constituted an injunction. We have decided that it was not an injunction, but note that the trial judge, after hearing extensive argument at two different dates—the first hearing occurring on the same day that Batavia filed its motion—chose to continue the citation hearing because he did not believe the matter required immediate adjudication. These facts unequivocally demonstrate that Batavia was afforded an immediate post-"seizure" hearing, and that the citation was continued under court supervision. Thus, although the present case did not involve the harsher prejudgment seizure scenario pre-

sented in *Mitchell*, Batavia was afforded the adequate safeguards enumerated by the United States Supreme Court.

Accordingly, we conclude that section 2—1402 is not an injunction, and find that the supplementary proceedings, as applied in this case, did not deprive Batavia of procedural due process. We affirm the holding of *Aspen I*, which held that the trial court's refusal to dissolve a citation to discover assets under section 2—1402 (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402) was not an appealable order under Supreme Court Rule 307 (107 Ill. 2d R. 307(a)(1)). The decision of the appellate court in *Aspen II*, holding that the citation to discover assets served upon Batavia pursuant to section 2—1402 constituted an injunction, is reversed.

We now turn our attention to the second issue in this case: whether the trial court's finding, and the appellate court's affirmance of that finding, that Batavia possessed the superior right to the stock in question, is against the manifest weight of the evidence. We do not believe that the trial court's finding was against the manifest weight of the evidence and affirm the decisions of the lower courts.

Aspen makes several arguments in support of its contention that Batavia should not be awarded the stock. First, Aspen argues that judgment debtor Thomas engaged in fraudulent conveyances with respect to the stock. Aspen bases this argument on the fact that Thomas and his wife created separate living trusts and divided their assets between themselves on March 26, 1981, shortly after Aspen made the loan to Thomas. At that time, Thomas listed the stock as an asset to be transferred to his own trust. Thomas later, on October 21, 1981, assigned his beneficial interest in his trust to his wife as "collateral" in exchange for her agreement to guarantee a bank loan. Aspen asserts that this conduct was fraudu-

lent in law. Second, Aspen contends that Batavia engaged in improper conduct by suggesting, when Roselaine Construction, Inc., could not repay the loan to Batavia, that Thomas sell the stock and pay the proceeds to Batavia as a more expeditious alternative to foreclosing on the stock.

We can best answer these contentions by quoting the appellate court's succinct analysis of Aspen's lengthy argument on these questions. The appellate court stated:

"Although the evidence may arguably support the inference that the March 26, 1981, transactions were fraudulent in law, that result would have no effect on the relative rights of Aspen and Batavia to the stock. Aspen apparently argues that in creating the two trusts and dividing his assets between them, Thomas made a fraudulent gift of some of his property to his wife. The stock in question was not among the assets transferred, however, and setting aside the March 26 transaction would not affect its ownership. As to the October 20, 1981, transfer, the evidence supports the inference, apparently accepted by the trial court, that Thomas did not transfer the stock to Mrs. Thomas without reservation, but merely gave her a security interest in all of the assets in his trust. That transfer was supported by consideration—her agreement to guarantee a loan—and therefore cannot have been fraudulent in law, because no gift was made. [Citation.] In any case, the trial court's conclusion is consistent with Aspen's position—that Thomas still owned the stock after the purported transfer.

Similarly, Thomas' transfer of the security interest in the stock to Batavia was supported by consideration and could not have been fraudulent in law, but only fraudulent in fact [citation]—an entirely distinct legal theory requiring the proponent to demonstrate a fraudulent intent. [Citations.] Aspen produced no evidence of an intent to defraud. We therefore conclude that ownership of the stock was not affected by any fraudulent conveyance and summarily reject as unsupported Aspen's contentions that Batavia somehow participated in or had notice of a fraud." *Aspen II*, 158 Ill. App. 3d at 944-45.

Aspen also argues that Batavia's security interest did not attach on the date that Batavia asserted it did, arguing that as a result, Batavia did not have a secured interest in the stock under the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 9—101 *et seq.*). Finally, Aspen contends that the loan instrument and guarantee that Thomas and Batavia entered into did not effectively transfer a security interest in the stock to Batavia.

Both the trial and appellate courts rejected these contentions after a thorough review of the evidence. The law is well settled in Illinois that a trial judge sitting without a jury must weigh the evidence and make findings of fact. (See *Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 124.) These findings of fact will not be reversed unless they are against the manifest weight of the evidence. We have reviewed the evidence in light of these contentions and find that the trial court's determination is not against the manifest weight of the evidence.

We affirm the appellate court's decision that Batavia possesses the superior interest in the stock. We reverse the appellate court's holding that the citation was, in effect, an injunction that was wrongfully issued, and that Batavia was entitled to damages. The circuit court of Kane County is affirmed and the cause is remanded to the circuit court of Kane County.

> *Appellate court affirmed in part and reversed in part; circuit court affirmed; cause remanded.*

JUSTICE CALVO took no part in the consideration or decision of this case.