ELMHURST AUTO PARTS, INC., *et al.*, Plaintiffs-Appellants, v. FENCL-TUFO CHEVROLET, INC., Defendant (Quality Chevrolet-GEO Company, Respondent-Appellee).

Second District   No. 2—91—1242

Opinion filed September 24, 1992.

E. Paul Lanphier and Jeffrey N. Kowalkowski, both of E. Paul Lanphier, Ltd., of Elmhurst, for appellants.

Daniel P. Dawson and Michael J. Daley, both of Nisen & Elliott, of Chicago, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiffs, Elmhurst Auto Supply Company, Inc., and Villa Park Automotive Supply, appeal the order of the circuit court denying their motion for turnover of assets held by respondent, Quality Chevrolet-GEO Company (Quality). Plaintiffs contend the trial court erroneously applied the six-month statute of limitations of the Uniform Commercial Code—Bulk Transfers (Ill. Rev. Stat. 1989, ch. 26, par. 6—110) to their motion for a turnover order. The issue on appeal is whether a supplementary proceeding commenced under section 2—1402 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1402) tolls the limitation period of section 6—110.

Prior to June 1990, plaintiffs sold and delivered auto parts to defendant, Fencl-Tufo Chevrolet, Inc. However, in May 1990, defendant and General Motors Automobile Corporation (GMAC) executed an "Asset Purchase Agreement" and bill of sale respectively with Sypolt-Chevrolet-GEO, Inc., which transactions were completed on June 14, 1990. Plaintiffs eventually filed a complaint against defendant seeking payment for the auto parts and, on September 13, 1990, obtained a default judgment against defendant in the amount of $4,439.44.

In November 1990, plaintiffs caused the sheriff to serve a citation to discover assets on "Mr. Sypolt c/o Quality Chevrolet" and unsuccessfully attempted to levy defendants' assets purchased by Sypolt-Chevrolet-GEO, Inc., which had in turn been assigned under a contract to Quality. Quality appeared and participated in the citation proceedings, which were continued several times, and produced documents concerning its ownership of the assets formerly owned by defendant. Eventually on July 9, 1991, plaintiffs moved for a turnover of assets against Quality. Plaintiffs alleged that on or about June 14, 1990, defendant conveyed a substantial portion of its assets to Quality without notifying its creditors of the bulk sale of its assets as required by section 6—104(1) of the Commercial Code—Bulk Transfers. (Ill. Rev. Stat. 1989, ch. 26, par. 6—104(1).) Therefore, the change of ownership of the assets was ineffective as to plaintiffs as creditors without notice of the sale, and Quality was holding property deemed to be assets of defendant (see Ill. Rev. Stat. 1989, ch. 26, par. 6—104(1)), to which plaintiffs were entitled in satisfaction of their judgment against defendant.

Quality moved to dismiss plaintiffs' motion for a turnover on several grounds. It maintained that the motion for a turnover was a levy and that because it was not filed until July 9, 1991, it fell outside the six-month statute of limitations that ran from the sale of assets. Quality also argued that its acquisition of the assets was not covered by the Commercial Code—Bulk Transfers based on various theories that are not at issue here.

On August 19, 1991, the trial court denied plaintiffs' motion for turnover "finding that a levy was not made within the time period of [section] 6—110." Plaintiffs filed a motion to reconsider the order, which the trial court denied on September 30, 1991. On October 24, 1991, plaintiffs filed a notice of appeal of those orders.

■ We first summarily dispose of Quality's assertion, without citation to authority, that we have no jurisdiction to hear this appeal because plaintiffs' motion to reconsider did not toll the time for filing their notice of appeal. Contrary to Quality's bare assertion, a motion to reconsider is a post-trial motion. (*Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 538; *Coleman v. Windy City Balloon Port, Ltd.* (1987), 160 Ill. App. 3d 408, 418-19.) Therefore, under Rule 303(a)(2) (134 Ill. 2d R. 303(a)(2)), the time for filing the notice of appeal was tolled pending the ruling on the motion for reconsideration. Plaintiff's notice of appeal was timely, and we have jurisdiction to hear such appeal.

Plaintiffs argue on appeal that they commenced an action within six months of the transfer of assets by virtue of their citation to discover assets on November 1, 1990, and, thus, section 6—110 does not apply to bar their claim. In contrast, Quality asserts that the citation to discover assets was not an action but merely a discovery measure.

■ Although the Commercial Code—Bulk Transfers was repealed effective January 1, 1992, it was effective at all times pertinent to this litigation. Section 6—110 of the Commercial Code—Bulk Transfers provides:

"No action under this Article shall be brought nor levy made more than 6 months after the date on which the transferee took possession of the goods unless the transfer has been concealed." (Ill. Rev. Stat. 1989, ch. 26, par. 6—110.)

Section 6—110 is based on section 6—111 of the Uniform Commercial Code. 2C U.L.A. §6—111, at 104 (1991).

■ Prior to the enactment of the Commercial Code—Bulk Transfers, a merchant owing many debts would sell his stock in trade to any purchaser, sometimes a relative, for any price, appropriate the proceeds and flee the jurisdiction. Left with only the law of fraudulent conveyances, creditors had to prove that the acquisition was not *bona fide* to prevail against the purchaser and his assets. Most creditors could not meet this burden. (Ill. Ann. Stat., ch. 26, art. VI, Introductory Comment, at 611 (Smith-Hurd 1963); 2C U.L.A. Prefatory Note, at 6 (1991).) Bulk sales laws remedied this problem by allowing creditors to trace the debtor's assets to the purchaser and to deem the assets as still belonging to the debtor-seller when the debtor-seller did not comply with the laws. (Ill. Rev. Stat. 1989, ch. 26, par. 6—104.) For the conveyance to be effective against creditors, the transferor of the assets must compile a sworn list of creditors and a schedule of assets (Ill. Rev. Stat. 1989, ch. 26, par. 6—104), and the transferee must give creditors 10 days' prior notice of the change of possession (Ill. Rev. Stat. 1989, ch. 26, par. 6—105). This notice provides creditors with the opportunity to investigate and prevent fraud prior to the conveyance. (Ill. Ann. Stat., ch. 26, par. 6—105, Illinois Code Comment, at 648 (Smith-Hurd 1963).) Without such notice, the transfer is deemed to be ineffective.

Because the remedy thus afforded was unique and available even against *bona fide* purchasers, and it was limited (see 2C U.L.A. Prefatory Note, at 7 (1991)), a short statute of limitations on the remedy was appropriate (Ill. Ann. Stat., ch. 26, par. 6—110, Uniform Commercial Code Comment, at 663 (Smith-Hurd 1963)). However, the remedy was cumulative of other legal remedies, and the statutes of

limitations pertaining to other actions, such as repossession under a security agreement or a fraudulent transfers action, were not affected. See *Palmeri v. Adams* (1972), 4 Ill. App. 3d 881, 883; *Boss v. Bassett Furniture Industries of North Carolina, Inc.* (1982), 249 Ga. 166, 170, 288 S.E.2d 559, 562.

The drafters of the Commercial Code anticipated that the primary application of the act would occur when judgment creditors levied upon the debtor's property held by a putative buyer. (See Ill. Ann. Stat., ch. 26, par. 6—110, Uniform Commercial Code Comment, at 663 (Smith-Hurd 1963).) In the case of such levy, no separate "action under this Article" would be necessary because the creditor's claim against the transferor-defendant would already be reduced to judgment, and only the levy against the transferee would be conducted pursuant to the Commercial Code—Bulk Transfers. See Ill. Ann. Stat., ch. 26, par. 6—110, Uniform Commercial Code Comment, at 663 (Smith-Hurd 1963).

However, the Commercial Code—Bulk Transfers also provided that a separate action could be brought. (See Ill. Rev. Stat. 1989, ch. 26, par. 6—110.) The remedies available to creditors are thus left to the general laws of fraudulent conveyances and can include such diverse remedies as garnishment against the transferee, a levy on the property in the hands of the transferee, a prejudgment attachment, a fraudulent conveyance suit with injunctive relief or other action (see Ill. Ann. Stat., ch. 26, par. 6—104, Illinois Code Comment, at 639-41 (Smith-Hurd 1963)), and the court may look outside the Commercial Code—Bulk Transfers for the appropriate remedy (*Pastimes Publishing Co. v. Advertising Displays* (1972), 6 Ill. App. 3d 414, 417; see *Froehlich v. J.R. Froehlich Manufacturing Co.* (1981), 93 Ill. App. 3d 179, 185).

The Uniform Commercial Code also provides that an " '[a]ction' in the sense of a judicial proceeding includes recoupment, counterclaim, set-off, suit in equity and any other proceedings in which rights are determined." (Ill. Rev. Stat. 1989, ch. 26, par. 1—201(1).) The remedies provided in the Uniform Commercial Code are to be liberally administered (Ill. Rev. Stat. 1989, ch. 26, par. 1—106), and, similarly, the provisions of the Code of Civil Procedure, which includes section 2—1402, are to be liberally construed (Ill. Rev. Stat. 1991, ch. 110, par. 1—106; *Second New Haven Bank v. Kobrite, Inc.* (1980), 86 Ill. App. 3d 832, 835). With this background, we must determine whether the commencement of a supplemental citation to discover assets proceeding under section 2—1402 was an action and whether such proceeding tolled the operation of section 6—110 of the Act.

■ A supplemental proceeding under section 2—1402, including a citation to discover assets, is a method by which a judgment creditor may proceed against the judgment debtor or third parties to discover and recover assets belonging to the judgment debtor for the purpose of applying the property in satisfaction of a judgment. (*Valley Pontiac-Cadillac-Jeep-Eagle, Inc. v. Jim Thornton Pontiac Cadillac, Inc.* (1989), 187 Ill. App. 3d 699, 703.) It differs from an execution and a levy as delineated in sections 12—110 and 12—111 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, pars. 12—110, 12—111). Pursuant to those sections, the lien of judgment does not attach to the debtor's personal property within the county until the execution process begins (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 278), which occurs when a certified copy of the judgment is delivered to the sheriff of the county for service (*In re Marriage of Rochford* (1980), 91 Ill. App. 3d 769, 774; *Kaiser-Ducett Corp. v. Chicago-Joliet Livestock Marketing Center, Inc.* (1980), 86 Ill. App. 3d 216). Upon presentment of the certified copy of the judgment, the sheriff may seize and levy upon the property of the debtor to satisfy the judgment. Illinois law no longer refers to "writs of execution" but to the enforcement of judgments and levies. See Ill. Rev. Stat. 1991, ch. 110, par. 2—1501; *Logston*, 103 Ill. 2d at 281-83.

In contrast, the filing of a citation to discover assets alone may not explicitly create a lien on that property of the debtor in the hands of a third party. (See *Poulos v. Litwin* (1989), 193 Ill. App. 3d 35, 39; *Water Technologies Corp. v. Calco, Ltd.* (N.D. Ill. 1990), 132 F.R.D. 670, 677.) Section 2—1402 is designed to provide a statutory foundation for an efficient and expeditious procedure to discover assets and compel their application to satisfy a prior judgment. (*Bank of Aspen v. Fox Cartage, Inc.* (1989), 126 Ill. 2d 307, 314.) It is also a versatile proceeding in which a judgment creditor may not only discover assets but also may obtain orders from the circuit court to restrain the transfer of assets, turn over property, garnish funds due to the debtor or property held for the debtor, or order the sheriff to sell discovered property. (Ill. Rev. Stat. 1991, ch. 110, pars. 2—1402(d)(2), (b)(3), (b)(4), (c).) The citation issued by the clerk of the court may contain a restraining provision prohibiting the third party from transferring away the debtor's property, which may be enforced either under punishment by a contempt proceeding or under the threat of entering a judgment against the third party for the amount of the transferred assets (*Bank of Aspen*, 126 Ill. 2d at 313, 320), and the circuit court may compel any person to assign property to the same extent as in any other proceeding brought by a creditor to enforce a judgment (Ill.

Rev. Stat. 1989, ch. 110, par. 2—1402(b)(5); *North Bank v. F & H Resources, Inc.* (1977), 53 Ill. App. 3d 950, 953). A supplemental proceeding can itself be a final order that is independent of the initial lawsuit that has been reduced to judgment. (See *Poulos*, 193 Ill. App. 3d at 38.) Similarly, the precursor of section 2—1402 was held to be "other judicial process" under section 9—311 of the Commercial Code. (*North Bank*, 53 Ill. App. 3d at 954.) Thus, section 2—1402(e) permits the court to determine the rights of third parties in the property and such supplemental proceeding is an "action." Ill. Rev. Stat. 1991, ch. 110, par. 2—1402(e); *cf.* Ill. Rev. Stat. 1991, ch. 26, par. 1—201(1) (Commercial Code definition of "action").

▮ Respondent was served and appeared personally in this supplemental proceeding (see *O'Connell v. Pharmaco, Inc.* (1986), 143 Ill. App. 3d 1061, 1069), and within the citation proceeding, the circuit court had the authority to determine the rights of the parties (Ill. Rev. Stat. 1991, ch. 26, par. 1—201(1); ch. 110, par. 2—1402(e)). The citation proceeding was not merely a subpoena to appear before the court and answer questions regarding the debtor's assets because the proceedings could have resulted in an injunction against the respondent, a judgment, an order of turnover or other relief. (*Cf. Baronski v. Shust* (1920), 218 Ill. App. 8, 11 (former citation process allowed only discovery).) Thus, the citation proceeding was an "action" for the purpose of section 6—110 of the Commercial Code—Bulk Transfers.

The trial court determined that the turnover order was a "levy" and was not made within six months as required by section 6—110. However, an action was commenced within the six-month statute of limitations with the filing of plaintiffs' citation to discover assets. The purpose of a statute of limitations is to protect parties from stale claims and give defendants an opportunity to investigate the circumstances. (*Segal v. Sacco* (1990), 136 Ill. 2d 282, 286; see *Amman Food & Liquor, Inc. v. Heritage Insurance Co.* (1978), 65 Ill. App. 3d 140, 147.) Plaintiffs gave respondent apt notice that they were contesting its title to defendant's former assets (*cf. Johanna Farms, Inc. v. Elliott Equipment Co.* (1976), 278 Md. 137, 149, 360 A.2d 436, 442 (section 6—111 tolled when a mechanic's lien was asserted without formal legal process)), and respondent was personally served with process (*O'Connell*, 143 Ill. App. 3d at 1069). We hold that section 6—110 is tolled by the commencement of the enforcement proceedings, including citation proceedings, against the holder of the property alleged to be owned by the transferor debtor.

We reverse the trial court's ruling regarding the statute of limitations. However, in its motion to dismiss Quality also alleged that

plaintiffs' claim was barred by affirmative matters outside the pleadings. Thus, we must remand the cause to the trial court for further proceedings.

For the above reasons, the order of the trial court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

BOWMAN and DOYLE, JJ., concur.