**RESOLUTION TRUST CORPORATION, as Receiver for Peoples Savings and Loan Associations, F.A., Plaintiff-Appellee,**

**v.**

**Angelo RUGGIERO and Gina Ruggiero, Defendant-Appellant.**

**Nos. 92-1154, 92-1155.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1993.

Decided May 20, 1993.

David L. Hazan, Randolph E. Ruff, William J. Raleigh (argued), Dehaan & Richter, Chicago, IL, Constance M. Borek, Resolution Trust Corp., Elk Grove Village, IL, for Resolution Trust Corp.

Michael L. Tinaglia, Laser, Schostok, Kolman & Frank, Chicago, IL (argued), for Gina Ruggiero.

Angelo Ruggiero, pro se.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

This appeal presents questions concerning the procedure for collecting a money judgment entered by a federal court. Angelo Ruggiero had borrowed money from a savings and loan association that went broke and was taken over by the Resolution Trust Corporation. He failed to repay the loan and the RTC, as receiver of the failed S & L, brought suit in federal district court and obtained judgments against him for some $300,000, which this court has now affirmed. *Resolution Trust Corp. v. Ruggiero,* 977 F.2d 309 (7th Cir.1992). Ruggiero not having posted an appeal bond, the RTC initiated a postjudgment proceeding in the district court to collect its judgments without waiting for this court to decide the appeal. Rule 69(a) of the Federal Rules of Civil Procedure provides that the procedure for enforcing federal court judgments "shall be in accordance with the practice and procedure of the state in which the district court is held," in this case Illinois, "except that any statute of the United States governs to the extent that it is applicable." The relevant provisions of Illinois law—section 2–1402 of the Code of Civil Procedure, Ill.Rev.Stat. ch. 110, ¶ 2–1402, and Supreme Court Rule 277, Ill.Rev.Stat. ch. 110A, ¶ 277—do various things: Entitle the judgment creditor to question the judgment debtor, or anyone else who might have relevant information, under oath regarding the existence and whereabouts of assets that might be used to satisfy the judgment; this inquiry is sometimes called a citation proceeding. Entitle any third party who claims an interest in those assets to appear and be heard on his claim. Empower the court to order the debtor to turn over property to the creditor to satisfy the judgment. The supplementary proceeding expires six months after the judgment debtor first appears for his citation examination, unless the time is extended by court order. The enactments

we have cited do not further specify the procedural details of supplementary proceedings.

Angelo Ruggiero claimed that the extensive real estate which the RTC believed he owned, and which appears to have an equity value of almost ten times the judgments held by the RTC against Ruggiero, is actually owned by his wife, Gina. So the RTC conducted a citation examination of her. Angelo, a member of the Illinois bar, appeared as her lawyer (later he hired a different lawyer for her, but continued to represent himself) and instructed her to refuse to answer almost 300 questions—for which misconduct he was sanctioned by Judge Shadur by being ordered to pay the expenses incurred by RTC as a result of the misconduct. Gina's examination was later completed. After that the RTC filed in the district court a petition, supported by legal and factual memoranda, asking the court to impose a resulting trust in favor of Angelo on the real estate purportedly owned by Gina (or simply order Gina to turn over the real estate to the RTC), to require a full accounting from the Ruggieros of their receipt of income from and their other transactions concerning the properties, and to furnish certain relevant documents.

The petition and supporting memoranda were filed on October 28, 1991. The Ruggieros requested and received an extension of time to December 2 to respond. They filed nothing by the deadline but on December 5 filed a flurry of motions aptly described by Judge Shadur as "procedural nonsense." Included was a motion on behalf of Gina Ruggiero to intervene, although she was already a party to the postjudgment proceeding and had been from the outset. None of the motions contested the facts set forth by the RTC in support of its petition. On December 23, Judge Shadur granted the petition in its entirety, decreeing all the relief that the petition had requested—and more, because he also ordered Angelo and Gina to cooperate with the RTC in recording and otherwise perfecting the interests that the RTC would acquire as a consequence of the resulting trust, set aside as fraudulent certain conveyances that Angelo had made recently of some of the properties, and ordered the Ruggieros to turn over even more documents than the petition had requested. Angelo Ruggiero then tried to derail the proceeding before Judge Shadur by filing, four days later, a petition for bankruptcy, which automatically stays all pending litigation against the debtor. The bankruptcy court promptly annulled the automatic stay and later dismissed the bankruptcy petition on the ground that it had been filed in bad faith. Later Judge Shadur held Angelo Ruggiero in contempt. Angelo filed an appeal, but we dismissed it on the ground that the finding of contempt was not a final, appealable judgment. *Resolution Trust Corp. v. Ruggiero*, 987 F.2d 420 (7th Cir.1993) (per curiam).

The Ruggieros appeal from the orders issued by Judge Shadur in granting the RTC's petition. They challenge with particular fervor the imposition of the resulting trust, the effect of which is to vest the extensive real estate nominally owned by Gina in her husband, where it is available to be executed upon by the RTC. There is a threshold question of our appellate jurisdiction, often tricky in post-judgment proceedings. The final-decision rule (28 U.S.C. § 1291) postpones appeal to the final judgment—but what about orders issued *after* the final judgment? There is no problem when the post-judgment order concludes a discrete, collateral proceeding, such as a proceeding to award attorney's fees for services rendered before the entry of the final judgment. The fee award is the final order in the collateral proceeding and is therefore appealable. But what of a proceeding to execute or otherwise enforce a judgment? That proceeding ends when the defendant's assets are seized and sold to pay the judgment—when in short the judgment is finally executed. But the execution is not an order. If execution is resisted, a series of orders may have to be issued before it is finally accomplished. Which of those orders are appealable?

A helpful way of approaching this question is to pretend that the supplementary proceeding to enforce the judgment is a free-standing lawsuit, the orders in which are appealable or not to the same extent as in a regular lawsuit. *Central States, Southeast & Southwest Areas Pension Fund v. Express*

*Freight Lines, Inc.,* 971 F.2d 5 (7th Cir. 1992); *King v. Ionization International, Inc.,* 825 F.2d 1180, 1184–85 (7th Cir.1987); *SEC v. Suter,* 832 F.2d 988, 990 (7th Cir. 1987); *Transportation Cybernetics Inc. v. Forest Transit Commission,* 950 F.2d 350, 352 (7th Cir.1992) (dictum). It is the same approach used to determine the appealability of orders issued in adversary proceedings in bankruptcy. *In re James Wilson Associates,* 965 F.2d 160, 166 (7th Cir.1992); *In re Lybrook,* 951 F.2d 136, 137 (7th Cir.1991); *Belisle v. Plunkett,* 877 F.2d 512, 513 (7th Cir. 1989). Like any use of analogy in law it must be applied with caution—in particular with due regard for the objective of the particular proceeding. We may have written too broadly when we said in *Central States, Southeast & Southwest Areas Pension Fund v. Express Freight Lines, Inc., supra,* 971 F.2d at 6, that a discovery order issued in a supplemental proceeding is nonfinal, as of course it would be in an ordinary proceeding. Often the sole object of such a proceeding is discovery of the judgment debtor's assets, since once they are discovered the judgment creditor may levy on them without obtaining a further court order. Ill.Rev.Stat. ch. 110, ¶ 2–1501. And an order that is the terminus of the case in the district court is final for purposes of appeal even if it is not a conventional judgment—even if it commences a proceeding in another forum. *University Life Ins. Co. v. Unimarc Ltd.,* 699 F.2d 846, 848 (7th Cir.1983). The analogy to a free-standing lawsuit is thus closer in the bankruptcy setting than in the postjudgment setting, because an adversary proceeding in bankruptcy is in most respects just like the free-standing lawsuit that would have been brought had not one of the parties been in bankruptcy.

The imposition of a resulting trust on the property nominally owned by Gina Ruggiero was the equivalent of an injunction. It closely resembled an order of specific performance. The standard remedy in the case of a seller's breach of a contract to convey land, an order of specific performance in such a case would direct the defendant to transfer title to the plaintiff, which is essentially what Judge Shadur ordered here. In form, it is true, all he did was declare that property the title to which was in A (Gina) in fact belonged to B (Angelo), so that C, B's judgment creditor (i.e., Resolution Trust Corporation), could levy on it to satisfy its judgment. But the effect of that declaration was to transfer so much of the property as necessary to satisfy the judgment from A to C, making it functionally equivalent to an order that A pursuant to contract convey property owned by him to C—an order of specific performance, hence an injunction, *Walgreen Co. v. Sara Creek Property Co.,* 966 F.2d 273, 276 (7th Cir.1992), hence appealable regardless of finality. 28 U.S.C. § 1292(a)(1). *Uehlein v. Jackson National Life Ins. Co.,* 794 F.2d 300 (7th Cir.1986), is readily distinguishable. The order held nonappealable in that case concerned not the ultimate disposition of the property but merely who should hold it pending the determination of title.

There is more. Besides imposing a resulting trust on "Gina's" property, Judge Shadur ordered the property turned over to the RTC, and this order, even more clearly than the imposition of the trust, was an order in the nature of specific performance. Cf. *In re Perkins,* 902 F.2d 1254 (7th Cir.1990). The order that Angelo cooperate with the RTC in perfecting the latter's newly acquired property rights was an explicit mandatory injunction. And even if only one of Judge Shadur's orders was appealable, his closely related orders in this case would be reviewable at the same time under the doctrine of pendent appellate jurisdiction. *Martin v. Consultants & Administrators, Inc.,* 966 F.2d 1078, 1083–84 (7th Cir.1992); *qad. inc. v. ALN Associates, Inc.,* 974 F.2d 834, 836–37 (7th Cir.1992).

The principal issue on the merits is whether Judge Shadur acted prematurely in granting the RTC's petition. The Ruggieros, Gina in particular, argue that they were denied an opportunity for a trial on their claim that Gina was the real and not merely the nominal owner of the property ordered transferred to Angelo by the device of the resulting trust. Gina was entitled to such a trial, they contend, by the Illinois Code of Civil Procedure; and even if summary judgment procedures are applicable to supplementary proceedings to execute judgment, the RTC

never moved for summary judgment. The petition was in effect a complaint, and Judge Shadur jumped the gun by granting judgment on the pleadings even though there were contested facts concerning the ownership of the property.

If supplementary proceedings to execute federal court judgments were governed by the Federal Rules of Civil Procedure and the body of interpretive elaboration of those rules, there would be no basis for a suggestion that Judge Shadur could not grant summary judgment unless the party in whose favor it was granted had asked for it. The rules do not forbid a judge to grant summary judgment on his own initiative. Of course, he can grant summary judgment only if the conditions in Rule 56 are satisfied, but those conditions do not include a requirement that a party have requested summary judgment. *Russell v. PPG Industries, Inc.*, 953 F.2d 326, 332 n. 4 (7th Cir.1992); *Horn v. City of Chicago*, 860 F.2d 700, 703 n. 6 (7th Cir.1988). A judge cannot be forced to hold a trial when there are no genuine issues of material fact, merely because the parties would prefer the leisurely processes of trial to the expedited processes of summary judgment. But he cannot properly grant summary judgment, when no party has moved for it, without first giving the parties notice of his intentions. *Id.; Russell v. PPG Industries, Inc., supra*, 953 F.2d at 332 n. 4; 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 at p. 27 (1983). Judge Shadur did not do this—moreover, while acting with summary swiftness to grant the RTC's petition, he did not say that he was granting summary judgment.

Rule 69(a) provides that in the absence of an applicable federal statute the procedure in supplementary proceedings to execute a federal court's judgment shall be that of the forum state. The draftsmen of the rule, rather than design a format for supplementary proceedings—with stages, deadlines, and other forms, powers, and limitations specially adapted to the needs of such proceedings—decided (perhaps in the hope that such proceedings would rarely be necessary) to borrow the format employed in the courts of the forum state. Though authority is sparse we doubt that they meant to borrow the *entire* procedural law of the state, so that in supplementary proceedings in federal district courts in Illinois the judge would apply the Illinois rules of civil procedure and of evidence rather than the counterpart federal rules. 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3012 at p. 63 (1973). But neither do we agree with the Tenth Circuit, see *Oklahoma Radio Associates v. FDIC*, 969 F.2d 940, 942 (10th Cir.1992); *Rumsey v. George E. Failing Co.*, 333 F.2d 960 (10th Cir.1964); also 12 Wright & Miller, *supra*, § 3012 at p. 63, that the judge must apply the federal rules because they have the force of statute. The reference in Rule 69(a) to applicable federal statutes appears to refer to federal statutes *expressly governing execution*, see Note of Advisory Committee on Rule 69(a), a category that would presumably comprehend any rule regulating execution, such as Rule 62(a), but not the rules of procedure or of evidence in gross.

But applying every jot and tittle of Illinois procedural law and applying every jot and tittle of federal procedural law are not the only alternatives. We are dealing with *supplementary* proceedings; and while for some purposes, such as appealability, they are fruitfully analogized to regular civil proceedings, the analogy becomes strained when procedure at the trial level is in issue. Proceedings to enforce judgments are meant to be swift, cheap, informal. *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill.2d 307, 127 Ill.Dec. 952, 955, 533 N.E.2d 1080, 1083 (1989). We do not think the draftsmen of Rule 69 meant to put the judge into a procedural straitjacket, whether of state or federal origin. *Martin v. C.D. Gray, Inc.*, 110 F.R.D. 398, 401 (N.D.Ill.1986). Moreover, Illinois law appears to leave the procedure to be followed in such proceedings largely to the judge's discretion, Ill.Rev.Stat. ch. 110A, ¶ 277(e), so that even if Judge Shadur had been required to follow every twist and turn of Illinois procedural law, the Ruggieros would be on weak ground. And, as we read the Illinois statutes that they cite, a third party claiming an interest in the debtor's property is enti-

tled to a trial only if a similarly situated debtor would be. Ill.Rev.Stat. 110, ¶¶ 2–1402(e), 12–710. We conclude that Judge Shadur could proceed in any way that satisfied the requirements of due process. He didn't have to apply Rule 56.

There was no violation of due process. Indeed, though it does not matter, there was not even a violation of Rule 56. The RTC's petition, although not captioned as a motion for summary judgment, requests specific relief and supports the request with a detailed statement of facts based on the transcript of the citation examination of Gina Ruggiero and other evidentiary materials. Although Judge Shadur could not have granted summary judgment for the RTC as a sanction for the Ruggieros' failure to make a timely, or indeed any pertinent, response to the petition, *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330 (7th Cir.1993)—for Rule 56(e) allows the grant of summary judgment only if the record so authorizes—that is not what he did. He was satisfied by the Ruggieros' failure to respond that they had nothing to add to the record. He drew the logical inference from their silence. That record, the pertinent portions of which were cited and discussed in the RTC's factual memorandum accompanying its petition, established that there were no genuine issues of material fact concerning who the equitable owner of the properties nominally owned by Gina Ruggiero was. The record shows that all the real estate nominally owned by Gina, most of it commercial, had been purchased by Angelo with his money and is managed by him and that its maintenance and other expenses are paid by him. The citation examination revealed that Gina has no idea of what or where the properties are, what they are worth, when they were bought, how they are encumbered. She has never had anything to do with any of the properties other than the house in which she and her husband live. She has no profession or career, no business activity or experience, and no income or wealth out of which she might have purchased the properties. Of course it is common for a person to make gifts, including gifts of real estate, to a spouse or other close family members, but there is no evidence that Angelo Ruggiero decided to give all his property, worth almost $3 million, to his wife. He *says* that that is what he did but he did not think enough of this bit of self-serving testimony to place it in the record in contradiction of the RTC's factual memorandum.

The record before Judge Shadur, examined in light of inferences fairly to be drawn from the Ruggieros' silence in the face of the RTC's factual memorandum, established that Angelo Ruggiero had placed title to his properties in his wife's name in order to insulate himself from creditors. It was bare legal title. It is true that most of the properties were bought and placed in her name before the RTC obtained the judgments that Angelo Ruggiero is trying desperately not to pay. But the RTC's theory, which Judge Shadur accepted, was that from the outset Gina Ruggiero held only a bare title in the properties. They were always Angelo's.

The Ruggieros can get no mileage from having captioned their response to the RTC's petition a "Rule 12" motion, by which they presumably meant a motion to dismiss the petition for failure to state a claim (12(b)(6)). It is true that Fed.R.Civ.P. 12(a)(1) provides that if a motion under Rule 12 is denied, the movant shall have ten days to file a responsive pleading. But a frivolous motion buys the movant no time. (We can find no cases so holding, but it seems obvious that a litigant should not be permitted to gain an advantage from a sanctionable filing.) Nor, as we have been at pains to insist, are the federal rules of civil procedure strictly applicable to supplementary proceedings. Even on appeal the Ruggieros have not indicated what factual errors the RTC's petition contained. So even if, as we do not believe, they were surprised by the speed with which Judge Shadur ruled on the petition, they were not prejudiced.

Only two more issues need be discussed. The first is whether any part of Judge Shadur's order is invalid because the order was issued more than six months after Angelo Ruggiero first appeared for his citation examination, no order extending it having been issued. We think not. The oral ruling which the written order memorialized was made several days before the six-month

deadline expired. This timetable establishes, at the least, substantial compliance with the statute, and under Illinois law no more is required. *National Bank v. Newberg,* 7 Ill. App.3d 859, 289 N.E.2d 197, 201 (1972); *Levine v. Pascal,* 94 Ill.App.2d 43, 236 N.E.2d 425, 432 (1968); see also *Arnold v. BLaST Intermediate Unit 17,* 843 F.2d 122, 125 (3d Cir.1988); 12 Wright & Miller, *supra,* § 3012 at p. 69. The citation examinations had repeatedly to be delayed because of Angelo Ruggiero's contumacious conduct, and these delays could be thought of as continuances extending the six-month period, as the statute permits. Moreover, since the deadline is intended not only to prevent property from being encumbered by judgment liens indefinitely, *King v. Ionization International, Inc., supra,* 825 F.2d at 11184–85, but also to protect the judgment debtor from being harassed by his creditors, *Kirchheimer Bros. Co. v. Jewelry Mine, Ltd.,* 100 Ill.App.3d 360, 55 Ill.Dec. 785, 789, 426 N.E.2d 1110, 1114 (1981); *National Bank v. Newberg, supra,* 289 N.E.2d at 201; cf. *Federal Loan Corp. v. Harris,* 17 Ill.App.3d 49, 308 N.E.2d 125, 127 (1974), a debtor who by his own actions delays the citation proceeding should be estopped to plead the deadline. Cf. *Celano v. Frederick,* 54 Ill.App.2d 393, 203 N.E.2d 774, 780 (1964).

There is no merit to the Ruggieros' argument that the imposition of the resulting trust was invalid because of the RTC's failure to join indispensable parties, namely holders of mortgages on some of the properties covered by the order. All the order did was shift the equity ownership from Gina to Angelo. Liens were unaffected. It is no different from a case in which the owner of property sells the property to someone else. The liens on the property are unaffected, so the holders of the lien are not indispensable parties to the case. In fact Judge Shadur's order is explicit in imposing the resulting trust only "as to all the nominal right, title and interest of Gina Ruggiero."

AFFIRMED.