# Illinois Official Reports

## Appellate Court

---

### *Shipley v. Hoke*, 2014 IL App (4th) 130810

---

| | |
|---|---|
| Appellate Court Caption | JAMES SHIPLEY, as Independent Executor of the Estate of Janet Shipley, Deceased, Plaintiff-Appellant, v. STEPHEN HOKE, PATRICK SHINE, and COONEY & CONWAY, Defendants-Appellees, and THE C.P. HALL COMPANY, Defendant. |
| District & No. | Fourth District<br>Docket Nos. 4-13-0810, 4-13-0837 cons. |
| Filed | November 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In supplementary proceedings under section 2-1402 of the Code of Civil Procedure to collect a judgment in an asbestos case where plaintiff allowed the proceedings to terminate at the six-month mark pursuant to Supreme Court Rule 277(f), justiciable matters were still presented by plaintiff's claims that three defendants involved with the judgment debtor violated the restraining provisions of the citation and the trial court had personal jurisdiction over two of the three, because one waived his objection to personal jurisdiction by moving to quash plaintiff's notice under Supreme Court Rule 237(b) and the other participated in the proceedings and testified he was the president, owner, and only employee of the judgment debtor, but the third, a law firm that won many judgments against the judgment debtor, was not properly served with the citation, and in the absence of a request from plaintiff for an extension of the supplementary proceedings beyond the six-month time limit, plaintiff was barred from invoking relief under section 2-1402, including relief from violations of restraining orders; therefore, the dismissal of plaintiff's enforcement orders was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 10-L-38; the Hon. Paul G. Lawrence, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | James Walker (argued), of James Walker, Ltd., of Bloomington, for appellant. |
| | Joseph D. Frank and Reed Heiligman, both of FrankGecker LLP, of Chicago, for appellee Cooney & Conway. |
| | Stephen R. Swofford and Peter D. Sullivan, both of Hinshaw & Culbertson LLP, of Chicago, for appellee Stephen Hoke. |
| | Patrick Shine, of Palos Park, appellee *pro se*. |
| | |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Harris and Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1    These consolidated appeals present questions of jurisdiction and procedure in supplementary proceedings under section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2010)) and Illinois Supreme Court Rule 277 (eff. July 1, 1982). Supplementary proceedings allow a judgment creditor to examine the judgment debtor or third parties to discover assets belonging to the judgment debtor that may be used to satisfy the judgment. Such proceedings are commenced by the service of a citation–issued by the clerk at the judgment creditor's request–upon the judgment debtor or a third party. The citation may include a restraining provision, which prohibits the party to whom the citation is directed from transferring, disposing of, or interfering with the judgment debtor's property. 735 ILCS 5/2-1402(f)(1) (West 2010). Failure to abide by this prohibition renders a third party liable for the full amount of the judgment, or the amount of the property transferred, whichever is less. *Id*. Supplementary proceedings automatically terminate six months after the cited party's first appearance, unless the trial court grants an extension. Ill. S. Ct. R. 277(f) (eff. July 1, 1982).

¶ 2     In December 2010, plaintiff served a citation on defendant, the C.P. Hall Company (C.P. Hall), a defunct asbestos distributor against which plaintiff won a $3 million judgment in November 2010. The citation included a restraining provision. In June 2011, following a hearing, plaintiff allowed the supplementary proceedings to automatically terminate, with the judgment remaining almost entirely unsatisfied.

¶ 3     Months later, after C.P. Hall filed for bankruptcy, plaintiff filed motions alleging that Stephen Hoke (former attorney for C.P. Hall), Patrick Shine (president and owner of C.P. Hall), and Cooney and Conway, LLC (Cooney) (a law firm that won hundreds of judgments against C.P. Hall on behalf of asbestos plaintiffs), violated the restraining provision of the December 2010 citation issued to C.P. Hall. Citing section 2-1402(f)(1) of the Code, plaintiff sought a judgment holding Hoke, Shine, and Cooney jointly and severally liable for the entire $3 million judgment. (We note that plaintiff called his motions "Motion[s] in Aid of Execution." Such motions appear to have no precedent in Illinois law. We refer to plaintiff's motions as "enforcement motions" because they invoke the enforcement mechanism of section 2-1402(f)(1) of the Code.) In the spring of 2013, the trial court issued separate orders finding that it lacked (1) subject-matter jurisdiction over Shine and (2) personal jurisdiction over Hoke and Cooney.

¶ 4     Plaintiff appeals, arguing that (1) the termination of supplementary proceedings did not deprive the trial court of subject-matter jurisdiction over plaintiff's enforcement motions, and (2) plaintiff's failure to issue separate citations to Hoke, Shine, and Cooney did not deprive the court of personal jurisdiction over those parties. Although we agree that the court had subject-matter jurisdiction over plaintiff's enforcement motions and personal jurisdiction over Hoke and Shine, we conclude that Hoke and Shine properly invoked the termination of supplementary proceedings as an affirmative defense, precluding plaintiff's right to relief under section 2-1402(f)(1) of the Code. We further conclude that plaintiff's failure to issue a separate citation to Cooney deprived the court of personal jurisdiction over Cooney. Accordingly, we affirm the court's judgment in both appeals.

¶ 5                                I. BACKGROUND

¶ 6     The following facts were gleaned from the parties' pleadings and exhibits, the evidence and testimony presented at the various hearings throughout this case, and the findings and orders of the McLean County circuit court (trial court) and the United States Bankruptcy Court for the Northern District of Illinois (bankruptcy court). Although the record before us contains tens of thousands of pages, we review only the facts pertinent to our decision.

¶ 7                                  A. The Parties

¶ 8     C.P. Hall is a defunct seller and distributor of raw asbestos fiber. The original plaintiff, Janet Shipley, allegedly contracted mesothelioma from C.P. Hall asbestos. (Following Janet's death in December 2010, Janet's husband, James Shipley, was substituted as plaintiff as independent executor of Janet's estate. We hereinafter refer to Janet and James collectively as "plaintiff.")

¶ 9     In the years before this case commenced, Cooney, a Chicago law firm, won hundreds of judgments against C.P. Hall on behalf of asbestos plaintiffs, many of whom are now dead or dying. (The Cooney plaintiffs are not parties to this case.)

¶ 10      In February 2009, Shine purchased C.P. Hall from the HallStar Company. Shine hoped that his experience as an insurance attorney would allow him to maximize C.P. Hall's insurance coverage returns while paying out the asbestos claims against C.P. Hall. Shine, as president, considers himself the only employee of C.P. Hall. At the time of the citation hearing, Hoke, a former attorney for C.P. Hall who assisted with Shine's purchase of the company, shared office space with Shine at C.P. Hall's office in Chicago. Hoke drew checks from C.P. Hall's accounts to pay C.P. Hall's rent, and he was the only person who made deposits into, or drew checks from, C.P. Hall's accounts during Shine's time as president.

¶ 11                     B. The Integrity Insurance Proceeds

¶ 12      During its years of operation, C.P. Hall purchased third-party liability insurance from the Integrity Insurance Company (Integrity). In June 2009, as Integrity was in the process of liquidation in New Jersey, C.P. Hall entered into a global settlement with hundreds of asbestos plaintiffs represented by Cooney, assigning to those plaintiffs all the proceeds of its Integrity insurance policies. At the time of the assignment, the Integrity liquidation was approaching a July 2009 bar date for the submission of claims. If C.P. Hall had not settled with the Cooney plaintiffs and submitted its claims to Integrity by the bar date, none of the proceeds from the Integrity liquidation would have been available to pay the Cooney plaintiffs' claims.

¶ 13      In January 2010, C.P. Hall received a "notice of determination" from Integrity, stating that as part of the liquidation, it would pay approximately $16 million to C.P. Hall for the purpose of covering the Cooney plaintiff's claims.

¶ 14                     C. Plaintiff's Case

¶ 15      In February 2010, plaintiff filed a complaint against C.P. Hall and other corporate defendants, alleging that exposure to asbestos from those companies caused her to contract mesothelioma, a terminal illness. Hoke represented C.P. Hall until August 2010, when the company became unable to pay his fees, and he withdrew as counsel. Without counsel, C.P. Hall failed to appear at subsequent court dates. On November 19, 2010, following a jury trial, the trial court entered a $3 million default judgment against C.P. Hall.

¶ 16               D. The Commencement of Supplementary Proceedings

¶ 17      On November 30, 2010, at plaintiff's request, the clerk issued a citation to discover assets to C.P. Hall, which included a restraining provision prohibiting C.P. Hall from transferring, disposing of, or interfering with any of its property that may be used to satisfy the judgment. See 735 ILCS 5/2-1402(f)(1) (West 2010). The citation named Shine as the "person receiving [the] citation," and plaintiff served the citation on C.P. Hall, through Shine, on December 1, 2010.

¶ 18      Janet died on December 11, 2010.

¶ 19      On December 17, 2010, the trial court held a hearing on the citation, at which Shine (1) testified on direct examination by plaintiff and (2) provided documentation of C.P. Hall's financial situation. The testimonial and documentary evidence that plaintiff elicited from Shine focused primarily on the location and nature of C.P. Hall's financial assets. Among other things, Shine explained that Integrity sent notice to C.P. Hall that it would pay out approximately $16 million on C.P. Hall's insurance policies, the rights to which C.P. Hall had

- 4 -

already assigned to the Cooney plaintiffs. The hearing was continued to January 7, 2011, at which time Shine provided further testimony and documentation of C.P. Hall's financial assets.

## E. Reassignment of the Integrity Distribution

In April 2011, because many of the terminally ill Cooney plaintiffs would not live to see the outcome of the Integrity liquidation proceedings, Cooney agreed to allow C.P. Hall to reassign its right to the Integrity insurance proceeds to a third party in exchange for an immediate lump-sum payout. Accordingly, C.P. Hall reassigned its right to the Integrity insurance proceeds to Global Legacy Acquisition (Global). Global immediately paid out cash, which it wired directly to Cooney for distribution to the Cooney plaintiffs.

## F. The Trial Court's June 2011 Turnover Order

On June 15, 2011, at the final court date of the supplementary proceedings, plaintiff provided the trial court with a proposed order that directed C.P. Hall to turn over $58,806 in bank assets that had been identified during the previous two hearing dates. Plaintiff argued that because the supplementary proceedings would automatically terminate on June 17, 2011 (six months after the date of C.P. Hall's first appearance (see Ill. S. Ct. R. 277(f) (eff. July 1, 1982))), the court should enter the turnover order immediately. Shine offered to waive the six-month termination deadline to allow C.P. Hall time to file written objections based upon the Cooney plaintiffs' superior right to C.P. Hall's property. However, plaintiff expressly objected to an extension of the supplementary proceedings.

Over Shine's objection–which he made on behalf of C.P. Hall–the trial court entered plaintiff's proposed order, which listed $58,806 of specific bank assets held by C.P. Hall, and ordered "that within seven days of this Order, [C.P. Hall] shall pay to plaintiff *** all funds in its possession or control on [December 1, 2010,] including the funds listed above." On June 17, 2011, the supplementary proceedings automatically terminated pursuant to Rule 277(f).

## G. C.P. Hall Files for Bankruptcy

C.P. Hall did not turn over any funds pursuant to the trial court's June 15, 2011, turnover order. Instead, on June 24, 2011, C.P. Hall filed for chapter 11 bankruptcy protection (11 U.S.C. § 101 *et seq.* (2006)) in the bankruptcy court.

## H. Plaintiff's Enforcement Motion Against Shine and Hoke

In November 2011, plaintiff filed in the trial court an enforcement motion against Shine and Hoke. The enforcement motion alleged that Shine and Hoke violated the restraining provisions of the citation issued to C.P. Hall, of which they had actual notice, by transferring C.P. Hall's assets during the six-month citation period. Specifically, the enforcement motion asserted that Shine and Hoke transferred (1) cash from C.P. Hall's bank accounts to various third parties and (2) C.P. Hall's right to receive the $16 million Integrity insurance payout to Global. The enforcement motion sought a judgment holding Shine and Hoke jointly and severally liable for plaintiff's full $3 million judgment against C.P. Hall pursuant to section 2-1402(f)(1) of the Code.

¶ 29                      I. Proceedings in the Bankruptcy Court

¶ 30    In December 2011, C.P. Hall filed a notice of removal of the enforcement motion in the bankruptcy court, which removed the enforcement motion against Hoke and Shine from the trial court to the bankruptcy court. On July 18, 2012, plaintiff filed a motion to remand the enforcement motion against Hoke and Shine from the bankruptcy court back to the trial court.

¶ 31                   J. Plaintiff's Enforcement Motion Against Cooney

¶ 32    On July 24, 2012, despite the removal of the trial court action to the bankruptcy court, plaintiff filed in the trial court an enforcement motion against Cooney. Like the enforcement motion against Hoke and Shine, the enforcement motion against Cooney was headed with the same caption as plaintiff's original action against C.P. Hall. The enforcement motion against Cooney alleged that Cooney, having actual notice of the December 2010 citation directed at C.P. Hall, violated the restraining provisions of the citation by causing C.P. Hall to reassign its right to receive the $16 million Integrity insurance proceeds to Global, and by allowing Global to transfer the lump-sum proceeds to Cooney. The enforcement motion against Cooney sought an order holding Cooney liable for plaintiff's full $3 million judgment against C.P. Hall pursuant to section 2-1402(f)(1) of the Code. Plaintiff mailed, via first-class mail, a copy of the filed enforcement motion to Cooney at its business address in Chicago.

¶ 33    On August 9, 2012, Cooney filed in the bankruptcy court a motion to quash plaintiff's enforcement motion for lack of personal jurisdiction, or, in the alternative, to enjoin any action by the trial court. On August 13, 2012, the bankruptcy court, Hon. A. Benjamin Goldgar, entered an order temporarily enjoining the trial court from taking any action in the case pending a final decision on Cooney's motion to quash the enforcement motion for lack of personal jurisdiction.

¶ 34               K. Remand From the Bankruptcy Court to the Trial Court

¶ 35    On August 17, 2012, the bankruptcy court granted plaintiff's July 2012 motion to remand the case back to the trial court, concluding that under the federal Bankruptcy Code (28 U.S.C. § 1334(b) (2006)), the bankruptcy court lacked subject-matter jurisdiction over the enforcement motion against Hoke and Shine because the enforcement motion neither (1) arose under Title 11, nor (2) arose in, or was related to, a case under Title 11. In the bankruptcy court's ruling, after stating its conclusion that it lacked subject-matter jurisdiction under the Bankruptcy Code (28 U.S.C. § 1334(b) (2006)), the court added the following:

> "Finally, it is worth noting that even if the requirements of [28 U.S.C. §] 1334(b) were met, the court would lack subject[-]matter jurisdiction over [plaintiff's enforcement motion against Hoke and Shine] because it is moot. Under Illinois Supreme Court Rule 277(f), a citation to discover assets 'terminates automatically' six months after the respondent's first personal appearance unless the court grants an extension. C.P. Hall first appeared in response to [plaintiff's] citation on December 17, [2010]. As far as the record shows, the citation was never extended. The citation therefore terminated on June 17, 2011, one week before C.P. Hall filed bankruptcy. With the citation's termination, [plaintiff's] right to relief under section 2-1402(f)(1) [of the Code] terminated as well. See *Chicago Title & Trust Co. v. Czubak*, 53 Ill. App. 3d 193, 196, 368 N.E.2d 404, 406 (1977).

Because the citation terminated, no relief can be granted to [plaintiff] on his motion against Shine and Hoke. *** When a court can no longer grant a party any effective relief, that party's request for relief is moot. [Citation.] Mootness is a jurisdictional doctrine. [Citation.] Since no relief can be granted to [plaintiff] on his motion against Shine and Hoke, or on his motion against [Cooney] for that matter, the motion is moot and subject[-]matter jurisdiction is absent for this reason, too."

¶ 36    Accordingly, the bankruptcy court (1) granted plaintiff's motion to remand, (2) lifted the temporary order enjoining the trial court from further action, and (3) denied as moot Cooney's motion to quash plaintiff's enforcement motion.

¶ 37    In October 2012, the C.P. Hall bankruptcy case was converted from a chapter 11 rehabilitative proceeding to a chapter 7 liquidation proceeding. See 11 U.S.C. § 701 *et seq.* (2006).

¶ 38                          L. Further Trial Court Proceedings
¶ 39              1. *Plaintiff's Rule 237(b) Notices and Requests for Documents*
¶ 40    On February 4, 2013–purportedly pursuant to Illinois Supreme Court Rule 237(b) (eff. July 1, 2005)–plaintiff mailed or faxed to Hoke, Shine, and Cooney (1) notices of a hearing on both enforcement motions set for February 8, 2013, and (2) requests for the production of documents.

¶ 41                                   2. *The Motions To Quash*
¶ 42    On February 6, 2013, Hoke filed a motion to quash plaintiff's Rule 237(b) notice. In the motion, Hoke asserted, among other things, that "plaintiff's Rule 237(b) notice erroneously presumes that he has a viable [enforcement motion]." Hoke requested that the trial court quash plaintiff's Rule 237(b) notice or, in the alternative, "stay the effects of said notice until the parties have completed a briefing schedule and the court has determined as a matter of law whether plaintiff can proceed with his [enforcement motion] with respect to [Hoke], and whether plaintiff can use a Rule 237(b) notice in support of his [enforcement motion]." Hoke did not assert an objection to the court's jurisdiction in his motion. On February 8, 2013, Shine filed a motion joining Hoke's motion to quash.

¶ 43    On February 7, 2013, pursuant to section 2-301 of the Code (735 ILCS 5/2-301 (West 2012))–which allows a party to file a motion to dismiss an entire proceeding based upon lack of personal jurisdiction–Cooney filed a "non-party motion to quash" plaintiff's (1) enforcement motion, (2) Rule 237(b) notice, and (3) request for documents. Cooney argued in its motion that the trial court lacked personal jurisdiction over Cooney because Cooney never (1) received service of process in accordance with the rules of discovery (see 735 ILCS 5/2-402 (West 2012); Ill. S. Ct. R. 201(o) (eff. Jan. 1, 2013)), (2) entered its appearance, or (3) consented to jurisdiction in this case.

¶ 44    On February 8, 2013, Shine filed a motion, joining Hoke's motion to quash. That same day, the trial court set a briefing schedule and hearings for the parties' motions to quash. Thereafter, the litigation essentially forked into two parallel proceedings: one involving Cooney's attempts to end the litigation and the other involving Hoke and Shine's attempts to end the litigation. For ease of explanation, we deviate from our normal chronological review of the

procedural history and address the remainder of the proceedings involving Cooney before turning back to review the remainder of the proceedings involving Hoke and Shine.

¶ 45                                    3. *Proceedings Involving Cooney*
¶ 46                            a. The Hearing on Cooney's Motion To Quash
¶ 47        At a March 26, 2013, hearing on Cooney's motion to quash, Cooney argued that it was never properly served in this case because plaintiff simply sent all of his pleadings against Cooney–including the original enforcement motion–by regular mail instead of serving the pleadings by certified or registered mail, or through personal service. Further, Cooney asserted that actual notice of a citation to discover assets was insufficient to confer personal jurisdiction over a nonparty in supplementary proceedings under section 2-1402 of the Code, especially if that party has no association with the party against whom the only citation was directed.

¶ 48        Plaintiff argued that although he did not serve the citation to discover assets upon Cooney, the trial court had personal jurisdiction because Cooney (1) had actual notice of the citation against C.P. Hall and (2) willingly participated in a violation of the restraining provisions of the citation by allowing C.P. Hall to transfer assets (the Global payout from the Integrity reassignment) to Cooney during the citation period.

¶ 49                                  b. The Trial Court's Ruling
¶ 50        At the conclusion of the parties' arguments at the March 26, 2013, hearing, the trial court granted Cooney's motion to quash, finding that (1) plaintiff's enforcement motion was part of a supplementary proceeding governed by section 2-1402 of the Code and Rule 277; (2) under Rule 277(c), Illinois Supreme Court Rule 105 (eff. Jan. 1, 1989) governed service of process in supplementary proceedings; and (3) the court lacked personal jurisdiction over Cooney because plaintiff failed to properly serve Cooney with the enforcement motion in accordance with Rule 105.

¶ 51                          c. Plaintiff's Continued Efforts Against Cooney
¶ 52        On April 3, 2013, plaintiff, through a private process server, hand-delivered to the secretary of Cooney's Chicago law office (1) a copy of the quashed enforcement motion and (2) a "Notice to [Cooney]," which stated, in pertinent part, as follows: "Judgment by default may be taken against you for the relief requested in the [enforcement motion] unless you file an answer or otherwise file an appearance in the [trial court] within 30 days after receipt of this Notice and the attached [enforcement motion]." Plaintiff did not, however, file a new enforcement motion.

¶ 53        On April 25, 2013, plaintiff filed a motion to reconsider, asking the trial court to vacate or modify its March 26, 2013, order that quashed the enforcement motion against Cooney. Plaintiff's motion essentially argued that the court should vacate its March 26, 2013, order because plaintiff had since properly served Cooney with the enforcement motion in accordance with Rule 105.

¶ 54        On May 20, 2013, Cooney filed a new nonparty motion to quash pursuant to section 2-301 of the Code, this one directed at plaintiff's (1) "Notice to [Cooney]" and (2) motion to reconsider the trial court's March 26, 2013, order.

¶ 55    In July 2013, following a hearing, the trial court (1) denied plaintiff's motion to reconsider and (2) granted Cooney's motion to quash plaintiff's "Notice to [Cooney]."

¶ 56    Plaintiff filed this appeal, to which we assigned case No. 4-13-0810.

¶ 57                    4. *Proceedings Involving Hoke and Shine*
¶ 58                    a. Hoke's Combined Motion To Dismiss
¶ 59    On March 1, 2013, before the trial court ruled on Hoke's motion to quash, Hoke filed a combined motion to dismiss plaintiff's enforcement motion pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)). The motion, which sought dismissal for lack of personal jurisdiction pursuant to section 2-301 of the Code, set forth the following additional bases for dismissal: (1) lack of subject-matter jurisdiction (735 ILCS 5/2-619(a)(1) (West 2012)); (2) "estoppel by judgment, *res judicata*, collateral estoppel, and plaintiff's improper collateral attack upon the bankruptcy court's ruling" (see 735 ILCS 5/2-619(a)(4) (West 2012)); (3) plaintiff's failure to serve Hoke with a citation, which constituted an affirmative matter that avoids the legal effect of plaintiff's supplementary proceedings (735 ILCS 5/2-619(a)(9) (West 2012)); and (4) failure to state a claim (735 ILCS 5/2-615 (West 2012)).

¶ 60                    b. Shine's Joinder of Hoke's Motion To Dismiss
¶ 61    On March 6, 2013, Shine filed a motion joining Hoke's section 2-619.1 motion to dismiss. In his motion, Shine specifically invoked section 2-301 of the Code and requested dismissal pursuant to that statute. In the alternative, Shine requested dismissal for the other reasons set forth in Hoke's section 2-619.1 motion to dismiss.

¶ 62                    c. The Hearing on Hoke and Shine's Motion To Dismiss
¶ 63    At a May 10, 2013, hearing on Hoke and Shine's combined motion to dismiss, Hoke argued that the trial court lacked subject-matter jurisdiction because the automatic termination of the supplementary proceedings in June 2011 barred plaintiff's right to initiate any type of subsequent enforcement proceedings related to the citation. Hoke also contended that because the bankruptcy court came to the same conclusion, the doctrines of collateral estoppel and *res judicata* barred the trial court from reaching a different conclusion. Finally, Hoke asserted that the court lacked personal jurisdiction because the citation was only served on C.P. Hall, not Hoke.

¶ 64    In response, plaintiff argued that subject-matter jurisdiction, unlike personal jurisdiction, is not subject to division between parties–the trial court either has subject-matter jurisdiction over the entire proceeding or it has none. Plaintiff essentially claimed that it would be absurd to conclude that the automatic termination of supplementary proceedings pursuant to Rule 277(f) precluded him from thereafter seeking judicial recourse for a party's violations of the citation's restraining provision. Such a conclusion, plaintiff contended, would place the burden on the judgment creditor to discover all violations of the restraining provision as they were happening, and to seek recourse for those violations before the end of the supplementary proceedings.

¶ 65    As to personal jurisdiction, plaintiff argued that Hoke and Shine's actual notice of the citation was sufficient to vest the trial court with personal jurisdiction over them. Further, plaintiff contended that Shine consented to the court's jurisdiction by appearing at the citation

hearing and arguing on behalf of C.P. Hall, and Hoke consented to the court's jurisdiction by filing pleadings directed at the merits of plaintiff's enforcement motion in the bankruptcy court and trial court.

¶ 66 Shine, who appeared at the hearing *pro se*, did not offer any argument. At the conclusion of the hearing, the trial court took the matter under advisement.

¶ 67 d. The Trial Court's Ruling

¶ 68 On May 22, 2013, the trial court entered an order granting Hoke and Shine's combined motion to dismiss. Without elaborating, the court simply stated in its order that it lacked (1) personal jurisdiction as to Hoke and (2) subject-matter jurisdiction as to Shine.

¶ 69 Plaintiff filed this appeal, to which we assigned case No. 4-13-0837. On plaintiff's motion, we consolidated plaintiff's appeal involving Cooney with his appeal involving Hoke and Shine.

¶ 70 II. ANALYSIS

¶ 71 Plaintiff argues that the trial court had (1) subject-matter jurisdiction over the entire proceeding and (2) personal jurisdiction over all parties. We first address whether the court had subject-matter jurisdiction over plaintiff's enforcement motions, which calls for a single analysis applicable to all the parties. We then address whether the court had personal jurisdiction over the individual parties and, if so, whether the court's judgment dismissing the action should nevertheless be affirmed on an alternative basis.

¶ 72 A. Subject-Matter Jurisdiction

¶ 73 The trial court in this case, without explaining its reasoning, dismissed plaintiff's enforcement motion as to Shine for lack of subject-matter jurisdiction. On appeal, plaintiff correctly notes that the court could not, as a matter of law, have lacked subject-matter jurisdiction as to only one of several parties. Instead, "[u]nlike the issue of jurisdiction over the person, subject[-]matter jurisdiction is not subject to division or apportionment. It either exists or it does not." *O'Connell v. Pharmaco, Inc.*, 143 Ill. App. 3d 1061, 1067, 493 N.E.2d 1175, 1179 (1986). In other words, if the court was correct in finding that it lacked subject-matter jurisdiction as to Shine, it must have also lacked subject-matter jurisdiction as to plaintiff's claims against Hoke and Cooney, as well. Accordingly, because a lack of subject-matter jurisdiction would be dispositive of all the claims at issue in these appeals, we address that question first.

¶ 74 Initially, however, we address whether we are bound by the bankruptcy court's determination that the termination of supplementary proceedings rendered plaintiff's claims moot–a determination that, if binding, would deprive the trial court of subject-matter jurisdiction as well. The bankruptcy court announced that conclusion after determining that it lacked subject-matter jurisdiction under the Bankruptcy Code (28 U.S.C. § 1334(b) (2006)). Under the doctrines of *res judicata* and collateral estoppel, the existence of a valid final judgment on the merits *by a court of competent jurisdiction* is necessary for the court's decision to have preclusive effect. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389-90, 757 N.E.2d 471, 477 (2001). Having concluded that it lacked subject-matter jurisdiction under the Bankruptcy Code (28 U.S.C. § 1334(b) (2006)), the bankruptcy court was not competent to

render a binding ruling on whether, under Illinois law, the termination of supplementary proceedings deprived the trial court of subject-matter jurisdiction over plaintiff's enforcement motions. Although we appreciate the bankruptcy court's thoughtful explanation of its reasoning for remanding the case, we are not bound by its conclusion regarding the effect of termination of supplementary proceedings.

¶ 75      Whether the court had subject-matter jurisdiction to entertain a claim is a question of law that we review *de novo. Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 26, 959 N.E.2d 1133. "Subject[-]matter jurisdiction refers to the court's power to hear and determine cases of the general class to which the proceeding in question belongs." (Internal quotation marks omitted.) *Id.* ¶ 27, 959 N.E.2d 1133 (quoting *In re M.W.*, 232 Ill. 2d 408, 415, 905 N.E.2d 757, 763 (2009)). "With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject[-]matter jurisdiction is conferred entirely by our state constitution." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334, 770 N.E.2d 177, 184 (2002); Ill. Const. 1970, art. VI, § 9. "[I]n order to invoke the subject[-]matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable matter." *Belleville Toyota, Inc.*, 199 Ill. 2d at 334, 770 N.E.2d at 184. "Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Id.* at 335, 770 N.E.2d at 184.

¶ 76      At issue here is whether plaintiff's enforcement motions, which alleged that Hoke, Shine, and Cooney were liable under section 2-1402(f)(1) of the Code for violating the restraining provision of the citation against C.P. Hall, presented justiciable matters. Hoke and Shine essentially argue that the termination of the supplementary proceedings pursuant to Rule 277(f) rendered plaintiff's claims nonjusticiable, depriving the trial court of subject-matter jurisdiction over plaintiff's enforcement motions against Hoke, Shine, and Cooney. (Cooney does not address subject-matter jurisdiction in its brief to this court.) Plaintiff contends that the automatic six-month termination of supplementary proceedings pursuant to Rule 277(f) does not create a jurisdictional bar to subsequent enforcement of the restraining provision of the expired citation. Before addressing the parties' arguments, we first turn to the pertinent statute and rule governing supplementary proceedings.

¶ 77      Section 2-1402 of the Code allows a judgment creditor to "prosecute supplementary proceedings for the purposes of [1] examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, *** and of [2] compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." 735 ILCS 5/2-1402(a) (West 2010). Such proceedings are commenced when, at the judgment creditor's request, the clerk issues a citation to discover assets, which is then served upon the party sought to be examined. 735 ILCS 5/2-1402(a) (West 2010); Ill. S. Ct. R. 277(a) (eff. July 1, 1982).

¶ 78      Section 2-1402(f)(1) provides that the citation may include a restraining provision:

"The citation may prohibit the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom *** belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or her, and from paying over or otherwise disposing of any moneys not so

- 11 -

exempt which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding, whichever occurs first." 735 ILCS 5/2-1402(f)(1) (West 2010).

¶ 79    Section 2-1402(f)(1) of the Code also sets forth the enforcement mechanism for the restraining provision, as follows: "The court may punish any party who violates the restraining provision of a citation as and for a contempt, or if the party is a third party may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser." 735 ILCS 5/2-1402(f)(1) (West 2010).

¶ 80    Supreme Court Rule 277 sets forth procedures for implementing section 2-1402 of the Code. *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 313, 533 N.E.2d 1080, 1083 (1989). Subsection (f) of Rule 277 provides for termination of supplementary proceedings, as follows:

> "(f) When Proceeding Terminated. A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require. Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise." Ill. S. Ct. R. 277(f) (eff. July 1, 1982).

¶ 81    In this case, plaintiff declined to request an extension of the supplementary proceedings, thereby allowing the proceedings to automatically terminate at the six-month mark pursuant to Rule 277(f). At issue for purposes of subject-matter jurisdiction, however, is not whether that automatic termination of supplementary proceedings barred plaintiff's right to relief under section 2-1402(f)(1) of the Code. See *Belleville Toyota, Inc.*, 199 Ill. 2d at 340-41, 770 N.E.2d at 188 ("[S]ubject[-]matter jurisdiction does not depend upon the ultimate outcome of the suit. A party may bring unsuccessful as well as successful suits in the circuit court."). Instead, at issue is whether plaintiff's claims that Hoke, Shine, and Cooney violated the restraining provisions of the citation–as those issues were framed in plaintiff's enforcement motions–presented justiciable matters. We conclude that they did.

¶ 82    As we will explain in further detail, although the supplementary proceedings had terminated when plaintiff filed his enforcement motions, a time-barred claim is not automatically rendered outside of the trial court's subject-matter jurisdiction. *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 413, 917 N.E.2d 475, 487 (2009) ("[T]he bar of a statute of limitations does not go to the court's jurisdiction to hear a case."). Instead, a time bar offers an affirmative defense, "which a defendant may, in its sole discretion, assert or waive." *Id*. Section 2-1402(f)(1) of the Code plainly vests the court with authority to enter a specific type of judgment for a specific type of violation. Plaintiff's enforcement motions clearly invoked that section of the Code and asked the court to enter judgment against Hoke, Shine, and Cooney for violating the restraining provision of a citation. Although Hoke, Shine, and Cooney may have other defenses to plaintiff's claims, those defenses do not render plaintiff's claims nonjusticiable for purposes of subject-matter jurisdiction. Because plaintiff's enforcement motions presented justiciable matters, the court had subject-matter jurisdiction over them.

¶ 83    We now turn to whether the trial court had personal jurisdiction over Hoke, Shine, and Cooney, and, if so, whether those parties invoked other defenses to plaintiff's claims that would support the court's dismissal.

¶ 84                              B. Personal Jurisdiction
¶ 85                                    1. *Hoke*
¶ 86    Hoke waived his objection to personal jurisdiction by filing his February 2013 motion to quash plaintiff's Rule 237(b) notice, which contained no objection to the trial court's personal jurisdiction pursuant to section 2-301 of the Code. That statute provides, in pertinent part, as follows:

> "(a) Prior to the filing of any other pleading or motion other than a motion for an extension of time to answer or otherwise appear, a party may object to the court's jurisdiction over the party's person, either on the ground that the party is not amenable to process of a court of this State or on the ground of insufficiency of process or insufficiency of service of process, by filing a motion to dismiss the entire proceeding or any cause of action involved in the proceeding or by filing a motion to quash service of process. ***

> (a-5) If the objecting party files a responsive pleading or a motion *** prior to the filing of a motion in compliance with subsection (a), that party waives all objections to the court's jurisdiction over the party's person." (Emphasis added.) 735 ILCS 5/2-301(a), (a-5) (West 2012).

Pursuant to section 2-301(a-5) of the Code, the court had personal jurisdiction over Hoke because Hoke waived his objection to personal jurisdiction by filing his motion to quash plaintiff's Rule 237(b) notice. (In so concluding, we use the term "waived" because that is the term used in section 2-301(a-5) of the Code. We note, however, that the action described in that section would more correctly be termed "forfeited" instead of "waived." See *People v. Phipps*, 238 Ill. 2d 54, 62, 933 N.E.2d 1186, 1191 (2010) ("Waiver is distinct from forfeiture ***. While forfeiture applies to issues that could have been raised but were not, waiver is the voluntary relinquishment of a known right.").)

¶ 87                                    2. *Shine*
¶ 88    When a judgment creditor serves a corporation with a citation to discover assets, failure to personally serve a corporate officer does not necessarily prevent the court from exercising personal jurisdiction over the corporate officer. In *O'Connell*, 143 Ill. App. 3d at 1069, 493 N.E.2d at 1181–cited by plaintiff–this court held that the trial court had personal jurisdiction over the defendant, Roger Larson, who was the former chief executive officer and director of the defendant corporation, Pharmaco. In that case, the citation was served upon " 'PHARMACO, INC., c/o Roger Larson-Corporate Officer.' " *Id.* at 1064, 493 N.E.2d at 1177. This court held as follows:

> "[W]e conclude that although [Larson] was not formally named as a party or served with a citation in his personal capacity[,] he nevertheless had notice of the proceedings, failed to limit his appearance in the trial court, actively participated and directed the litigation[,] and requested affirmative relief from the court when it became apparent

that plaintiffs sought to discover assets of the judgment debtor which he held. Personal jurisdiction over defendant was satisfied." *Id*. at 1069, 493 N.E.2d at 1181.

¶ 89    In this case, Shine–although not formally named as a party or served with a citation in his personal capacity–appeared at the citation hearing and purported, at times, to represent the interests of C.P. Hall. Further, Shine testified that he was the president, owner, and only employee of C.P. Hall. For all practical purposes pertaining to plaintiff's citation, Shine *was* C.P. Hall. The issuance of the citation to C.P. Hall, combined with Shine's participation in the supplementary proceedings, sufficiently vested the trial court with personal jurisdiction over Shine.

¶ 90                                    3. *Cooney*

¶ 91    Plaintiff presents a convoluted argument regarding the source of the trial court's personal jurisdiction over Cooney. According to plaintiff, the court had personal jurisdiction over Cooney because Cooney's "actual notice and possession of the [enforcement motion] satisfied the requirements of both procedural and substantive due process." To get to this ultimate conclusion, plaintiff begins by citing the above-quoted holding in *O'Connell* for the proposition that "neither section 2-1402 [of the Code] nor Rule 277 require[s] that a third party be formally made a defendant" in supplementary proceedings. From this ostensible rule, plaintiff asserts that in all supplementary proceedings, any party who has actual notice of a citation to discover assets is bound by it and may be held personally liable for violating its restraining provision. To put it another way, plaintiff contends that although Rule 277(c) sets forth specific requirements for the service of a citation upon a third party, a third party need only have actual notice of a citation to be bound by it. Plaintiff concludes that because Cooney allegedly had actual notice of the citation issued to C.P. Hall (a fact that is nowhere established in the record), the court had personal jurisdiction over Cooney. However, we conclude that plaintiff's argument is contrary to the text and purpose of section 2-1402 of the Code and Rule 277.

¶ 92    Section 2-1402 of the Code and Rule 277 discuss two categories of parties against whom a judgment creditor may bring supplementary proceedings: (1) the judgment debtor and (2) third parties who the judgment creditor believes have property of, or are indebted to, the judgment debtor. The statute and its implementing rule set forth substantive and procedural requirements for the issuance and service of a citation upon third parties, including requirements designed to apprise the party to whom the citation is directed of its rights, responsibilities, and potential liabilities. See 735 ILCS 5/2-1402(b) (West 2010); Ill. S. Ct. R. 277(c) (eff. July 1, 1982) (providing that a citation to discover assets "shall be served and returned in the manner provided by rule for service, otherwise than by publication, of a notice of additional relief upon a party in default"). Further, Rule 277(g) provides that "[s]upplementary proceedings against the debtor and third parties may be conducted concurrently or consecutively. The termination of one proceeding does not affect other pending proceedings not concluded." Ill. S. Ct. R. 277(g) (eff. July 1, 1982).

¶ 93    The above provisions illustrate that the General Assembly and the Supreme Court of Illinois contemplated a separate citation for each judgment debtor and third party. This makes sense because supplementary proceedings may target third parties who might not even know that a lawsuit has taken place or that a judgment has been rendered. For this reason, the

initiation of supplementary proceedings against a third party must be accompanied by service of process and the special notices set forth in section 2-1402(b) of the Code.

¶ 94 Acceptance of plaintiff's argument would render superfluous many of the provisions of section 2-1402 of the Code and Rule 277 governing third parties. Under plaintiff's theory, a single citation issued to the judgment debtor would effectively bind all third parties having actual notice of the citation. Indeed, this is exactly what plaintiff asserts happened in this case through the issuance of a citation against C.P. Hall. However, section 2-1402(f)(1) of the Code clearly provides that the restraining provision of a citation restrains "the party to whom [the citation] is directed" from taking certain actions toward the judgment debtor's property (735 ILCS 5/2-1402(f)(1) (West 2010)). Plaintiff seems to suggest in his brief that because supplementary proceedings are "ancillary to the original action," the due process requirements are more lax, and the procedural protections set forth in section 2-1402 of the Code and Rule 277 are mere suggestions. However, because issuance of a citation imposes very real restrictions and affirmative duties upon a third party–backed by the threat of contempt and monetary liability–the service and notice requirements set forth in section 2-1402 of the Code and Rule 277(c) mirror the requirements of due process.

¶ 95 By arguing that Cooney was bound by the citation issued to C.P. Hall because it had actual notice of it, plaintiff equates the restraining provision of a citation to an injunction, asserting that the trial court's authority under section 2-1402(f)(1) of the Code derives from the court's inherent authority to enforce its orders. However, the supreme court has held that the restraining provision of a citation is not an injunction, but instead, it "simply informs the citee of the penalties which may occur if it transfers or disposes of property belonging to the judgment debtor." *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 315, 533 N.E.2d 1080, 1083 (1989). The purpose of the restraining provision is to provide " 'a means of forestalling the judgment debtor or a third party from frustrating the supplementary proceedings before the judgment creditor has had an opportunity to reach assets[ ] *** in the possession of [the] debtor or of a third party.' " *Id*. at 314, 533 N.E.2d at 1083 (quoting *Kirchheimer Brothers Co. v. Jewelry Mine, Ltd.*, 100 Ill. App. 3d 360, 362, 426 N.E.2d 1110, 1113 (1981)).

¶ 96 Unlike an injunction, which is binding upon any party having actual notice of it (*Stavros v. Karkomi*, 28 Ill. App. 3d 996, 1003, 329 N.E.2d 563, 569 (1975)), the restraining provision of a citation to discover assets is binding only upon the party cited. See 735 ILCS 5/2-1402(f)(1) (West 2010) ("The citation may prohibit *the party to whom it is directed* from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom ***." (Emphasis added.)).

¶ 97 Because a citation was never directed to Cooney, Cooney was never prohibited from doing any of the things that section 2-1402(f)(1) of the Code prohibits a cited party from doing. The cases plaintiff cites regarding corporate officers merely reflect the reality that corporations are made up of individual people, and those people should rightfully be held liable for violating the restraining provision of a citation issued to the corporation. However, unlike Hoke and Shine, who were corporate officers of C.P. Hall, Cooney was a completely outside entity. Cooney's only relationship with C.P. Hall was that of a longtime adversary in litigation. Service of the citation to discover assets upon C.P. Hall did nothing to confer the court with personal jurisdiction over Cooney.

¶ 98 Because the citation to discover assets did not confer personal jurisdiction over Cooney, plaintiff's July 2012 enforcement motion against Cooney was, for all practical purposes, a

- 15 -

freestanding civil complaint asserting a cause of action under section 2-1402(f)(1) of the Code. However, plaintiff simply sent the enforcement motion to Cooney through the regular mail, which did not satisfy the requirements for proper service of process. After the trial court quashed plaintiff's enforcement motion, plaintiff attempted to serve the quashed enforcement motion on Cooney through one of the methods permitted under Rule 277(c). However, because the court quashed the enforcement motion, and plaintiff never refiled, plaintiff's final attempt at service on Cooney was a nullity. See Black's Law Dictionary 1363 (9th ed. 2009) (to "quash" means to "annul or make void").

¶ 99    We note that our holding does not diminish the scope of protection that section 2-1402 of the Code provides to judgment creditors; it simply recognizes the procedures set forth in the statute and Rule 277. Plaintiff could have conferred the trial court with personal jurisdiction over Cooney simply by issuing a separate citation to Cooney. Plaintiff learned as early as December 17, 2010, at the first date of the citation hearing, that C.P. Hall had assigned its right to the Integrity liquidation payout to the Cooney plaintiffs. Assuming *arguendo* that those liquidation proceeds were the property of C.P. Hall, as plaintiff alleges, a citation issued to Cooney–or to the Integrity liquidator–could have included a restraining provision freezing the assets in place. Supplementary proceedings do not reward the judgment creditor who attempts to kill multiple birds with a single stone.

¶ 100   As a final matter pertaining to plaintiff's argument that Cooney was bound by the citation issued to C.P. Hall, we address plaintiff's reliance on the supreme court's decision in *Podvinec v. Popov*, 168 Ill. 2d 130, 658 N.E.2d 433 (1995). In that case, the judgment creditor (Podvinec) served a citation to discover assets on the judgment debtor (Popov). At the time, Popov was the plaintiff in an unrelated action (the Popov action) against a bank and other defendants (respondents). In Podvinec's supplementary proceedings, the trial court entered a judicial lien " 'upon any funds realized' " in the Popov action. *Id.* at 132-33, 658 N.E.2d at 434-35. (We note that the General Assembly has since codified the citation lien in section 2-1402(m) of the Code (735 ILCS 5/2-1402(m) (West 2010) (added by Pub. Act 88-48 (eff. July 6, 1993))).) The court granted Podvinec's motion to have the lien "spread of record" in the Popov action, which essentially made the lien part of the recording in the Popov action, putting the parties to that action on notice of the lien. Respondents were served with notice of Podvinec's motion to spread the lien of record, to which they did not object.

¶ 101   Months later, the court in Podvinec's supplementary proceedings entered an order discharging the citation but providing that the lien remain in place. Two years later, after settlement in the Popov action, Podvinec filed a "petition for enforcement of the judicial lien," seeking an order finding Popov and the respondents (1) in contempt for violating the lien and (2) jointly and severally liable for the full amount of Podvinec's judgment against Popov. The trial court granted Podvinec's petition. The supreme court affirmed, concluding that the respondents could be held liable for violating the lien imposed in Podvinec's supplementary proceedings:

> "The effect of spreading the lien of record [in the Popov action] was to give the respondents notice of the lien. Once the lien was spread of record, the respondents were bound by the lien. Thus, the respondents acted at their own peril in paying the settlement proceeds of the Popov action directly to Popov without giving notice to Podvinec. As the respondents had notice of the lien, Podvinec now has the right to

- 16 -

obtain the amount of the lien plus costs from the respondents." *Popov*, 168 Ill. 2d at 135, 658 N.E.2d at 436.

*Popov* is distinguishable from this case for several important and interrelated reasons.

¶ 102    First, as the *Popov* court's holding indicates, notice of the lien (through spreading the lien of record in the Popov action) was what made the lien binding on respondents. In this case, under plaintiff's theory, Cooney became bound by the restraining provision of the citation issued to C.P. Hall without (1) receiving notice of the citation or (2) having an opportunity to contest whether it held any of C.P. Hall's property. In *Popov*, before the lien was spread of record and made binding on the respondents, the "respondents had a full opportunity to be heard at the hearing on [Podvinec's motion to spread the lien of record], but the respondents failed to challenge Podvinec's motion and failed to object to the validity of the lien." *Id*. Podvinec's motion to spread the lien of record in the Popov action was a means of providing the respondents with notice of the lien and an opportunity to be heard. The same could have been accomplished in this case had plaintiff issued a separate citation to Cooney, which would have (1) bound Cooney by a restraining provision, (2) provided Cooney with notice of that restraining provision, and (3) afforded Cooney an opportunity to be heard on the issue of whether it held C.P. Hall's property.

¶ 103    Second, in *Popov*, the lien was the product of a judicial determination–made following a citation hearing–that Podvinec had a right to the funds realized in the Popov action. Unlike the lien at issue in *Popov*, the restraining provision of a citation freezes only the judgment debtor's property, the existence of which has yet to be judicially determined. For this reason, supplementary proceedings allow the judgment creditor to bring the necessary parties and documents into court for examination to identify the judgment debtor's property. The citation hearing is where the judgment debtor's ownership of property is determined.

¶ 104    In this case, Shine's testimony at the citation hearing clearly laid out the (1) existence of the $16 million in Integrity insurance proceeds and (2) C.P. Hall's assignment of those proceeds to the Cooney plaintiffs. Although plaintiff now alleges that the Integrity insurance proceeds were the property of C.P. Hall, he fails to explain why he did not (1) include those proceeds in his proposed turnover order or (2) seek a finding that C.P. Hall owned the proceeds. The supplementary proceedings were plaintiff's opportunity to obtain a judicial determination of C.P. Hall's property. He cannot claim after the fact that Cooney violated the restraining provision of the citation by transferring property that was never determined to belong to C.P. Hall.

¶ 105    Third, C.P. Hall's reassignment of the Integrity insurance proceeds from the Cooney plaintiffs to Global in April 2011 was a far cry from the actions of the *Popov* respondents, who knowingly transferred a settlement payment to Popov in direct violation of Podvinec's lien, of which they had demonstrable notice. C.P. Hall's willingness to execute the necessary papers to provide the dying Cooney plaintiffs with an immediate lump-sum payment from Global had no substantive effect on the nature of the property at issue or C.P. Hall's right to that property. It was not as if C.P. Hall could have decided to keep the $16 million in insurance proceeds at any point during the reassignment to Global. The Integrity liquidator specifically awarded the proceeds to C.P. Hall to pay for the Cooney plaintiffs' specific claims, and the Cooney plaintiffs held the right to those proceeds since the execution of the assignment in June 2009.

¶ 106    Finally, the restraining provision of a citation is not the same as a judicial lien. Plaintiff in this case is attempting to invoke the trial court's statutory authority under section 2-1402(f)(1)

- 17 -

of the Code to punish for a violation of the restraining provision of a citation. In *Popov*, Podvinec invoked the court's inherent authority to hold Popov and the respondents in contempt for violating the lien, which was a court order. *People v. Warren*, 173 Ill. 2d 348, 368, 671 N.E.2d 700, 710 (1996) ("A court is vested with inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings."). As already explained, the restraining provision of a citation–which a judgment creditor can impose on a third party without even speaking to a judge–does not rise to the level of a court order, and the court's authority to enforce the restraining provision is not inherent, but derivative of the statute that authorizes the restraining provision. 735 ILCS 5/2-1402(f)(1) (West 2010). Accordingly, whereas the lien in *Popov* survived the termination of citation proceedings, the restraining provision of the citation issued to C.P. Hall did not.

¶ 107    Plaintiff's failure to serve Cooney with a separate citation to discover assets precluded the trial court from exercising personal jurisdiction over Cooney in the supplementary proceedings against C.P. Hall. Accordingly, the court properly concluded that it lacked personal jurisdiction over Cooney.

¶ 108                    C. Hoke and Shine's Affirmative Defense Under Rule 277(f)

¶ 109    Although we have concluded that the termination of supplementary proceedings pursuant to Rule 277(f) did not deprive the trial court of subject-matter jurisdiction over plaintiff's enforcement motions, Rule 277(f) did provide an affirmative defense to plaintiff's claims, similar to the affirmative defense that a statute of limitations creates. Rule 277(f) essentially provides that unless an extension is granted, a judgment creditor's right to wield section 2-1402 of the Code as a sword terminates six months after the citation respondent's first appearance. "[T]he primary purpose of Rule 277(f) is to prevent the harassment of the judgment debtor or any third party subject to the citation proceeding." *Kirchheimer Brothers Co.*, 100 Ill. App. 3d at 364, 426 N.E.2d at 1114. Once supplementary proceedings have terminated, a party may assert the termination as an affirmative defense to shield that party from a judgment creditor's attempt to use section 2-1402 of the Code as a sword.

¶ 110    In *Chicago Title & Trust Co. v. Czubak*, 53 Ill. App. 3d 193, 195, 368 N.E.2d 404, 405 (1977), following the automatic termination of supplementary proceedings pursuant to Rule 277(f), the trial court entered an order finding the citation respondent in contempt of court for his earlier refusal (*prior to* the termination of supplementary proceedings) to appear and be examined pursuant to the citation issued to him. At issue on appeal was "whether the [supplementary] proceedings had been terminated prior to the entry of the contempt order, and, if so, whether it was error for the trial court to enter the contempt order." *Id*. The appellate court answered both questions in the affirmative, holding as follows:

> "[W]here the underlying [supplementary] proceeding has automatically terminated, so must all other proceedings which are collateral to it except as exempted by supreme court rule. [Citations.] Contempt proceedings are not exempted by Rule 277(f). Since the [supplementary] proceedings automatically terminated on March 9, 1976, the contempt proceedings also were terminated as of that date because such proceedings were collateral to the citation. As such, the contempt order which was entered after the termination date must fail because the contempt proceedings had been terminated." *Id*. at 196, 368 N.E.2d at 406 (citing *Federal Loan Corp. v. Harris*, 17 Ill. App. 3d 49, 51-52, 308 N.E.2d 125, 128 (1974) ("Where, as here, the underlying [supplementary]

- 18 -

proceeding has automatically terminated, so must all other proceedings which are collateral to it except as exempted by Supreme Court Rule.")).

¶ 111   Plaintiff attempts to avoid the rule articulated in *Czubak* and *Harris* by arguing that (1) under Rule 277(f), the trial court's June 15, 2011, turnover order continued in effect notwithstanding the termination of supplementary proceedings and (2) *Czubak* is contrary to the well-established rule that a court has inherent authority to punish for a violation of its orders. In other words, plaintiff seems to contend that because Rule 277(f) provides that "[o]rders for the payment of money continue in effect notwithstanding the termination of the proceedings" (Ill. S. Ct. R. 277(f) (eff. July 1, 1982)), the court's power under section 2-1402(f)(1) of the Code must also survive the termination of supplementary proceedings. Plaintiff's argument misconstrues both the facts and the law at issue.

¶ 112   Plaintiff is correct that under the final clause of Rule 277(f), the trial court's June 15, 2011, turnover order–which directed C.P. Hall to turn over $58,806 in specific assets and all other funds in its possession as of December 1, 2010–continued in effect after the supplementary proceedings terminated on June 17, 2011. However, plaintiff fails to explain how the court's continued authority to enforce its turnover order also preserved the court's statutory authority under section 2-1402(f)(1) of the Code to "punish any party who violates the restraining provision of a citation." 735 ILCS 5/2-1402(f)(1) (West 2010).

¶ 113   Plaintiff does not dispute that the supplementary proceedings in this case terminated in June 2011. His argument, however, attempts to tether the court's authority under section 2-1402(f)(1) of the Code to turnover orders, which survive the termination of supplementary proceedings but have nothing to do with restraining provisions. Simply put, the continued validity of a turnover order provides the court with no continued authority under section 2-1402(f)(1) of the Code. Rule 277(f), which "terminates" supplementary proceedings after six months, would have little meaning if a turnover order provided the court with continuing authority to grant a judgment creditor the full scope of relief permitted under section 2-1402 of the Code.

¶ 114   Our conclusion that a judgment creditor's right to relief under section 2-1402(f)(1) of the Code expires with the termination of supplementary proceedings is consistent with the overall purpose and structure of section 2-1402 of the Code and Rule 277. Section 2-1402 of the Code gives judgment creditors a commanding arsenal of tools for discovering and reaching the property of the judgment debtor. The citation to discover assets provides the judgment creditor with unique *ex parte* power to haul faultless third parties into court for examination, to require them to produce documents, and to hold them liable for the full amount of the judgment if they transfer, dispose of, or interfere with any of the judgment debtor's property. 735 ILCS 5/2-1402(f)(1) (West 2010). This generous grant of power is tempered by the termination provisions of Rule 277(f), which provide incentives for the judgment creditor to work diligently and thoroughly to discover and reach all available property that might be used to satisfy the judgment during the limited time allotted.

¶ 115   This is not to say, however, that Rule 277(f) always requires a judgment creditor to abandon his unsatisfied judgment after six months. In this case, plaintiff could have preserved his right to invoke section 2-1402(f)(1) of the Code by requesting an extension of the supplementary proceedings beyond the default six-month time limit. He failed to do so. Rule 277(f) gives the trial court great discretion to adjust the length of supplementary proceedings to fit the particular needs of a given case. In this case, for example, if the court had deemed it just,

the court could have entered an order from the outset stating that the supplementary proceedings would remain open until further order of the court. Ill. S. Ct. R. 277(f) (eff. July 1, 1982) ("A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment ***. The court may, however, grant extensions beyond the 6 months, as justice may require."). The six-month time limit is merely the default period. Plaintiff's failure to request an extension of the proceedings beyond the default six-month period doomed his right to invoke section 2-1402(f)(1) of the Code after the termination of the proceedings.

¶ 116    Because Hoke and Shine have argued throughout this case that the termination of supplementary proceedings barred plaintiff from invoking the provisions of section 2-1402(f)(1) of the Code, we affirm the trial court's dismissal of plaintiff's enforcement motions against them based upon their invocation of that affirmative defense. *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 48, 951 N.E.2d 1131 ("[A]n appellate court may affirm a trial court's judgment on any grounds which the record supports ***.").

¶ 117                                    III. CONCLUSION

¶ 118    For the reasons stated, we affirm the trial court's judgment in both appeals.

¶ 119    Affirmed.